**UNITED STATES of America, Plaintiff–Appellee–Cross–Appellant,**

v.

**Victor Manuel Lee ARMIJO, Defendant–Appellant–Cross–Appellee.**

**Nos. 90–30408 and 91–30034.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 1993.

Decided Sept. 7, 1993.

---

Charles S. Dorn and Patrick K. Stiley, Stiley & Kodis, Spokane, WA, for defendant-appellant-cross-appellee.

Ronald W. Skibbie, Asst. U.S. Atty., Spokane, WA, for plaintiff-appellee-cross-appellant.

Before: SKOPIL, ALARCON and BEEZER, Circuit Judges.

SKOPIL, Circuit Judge:

Victor Manuel Lee Armijo appeals his conviction following a jury trial for distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) (1988). He contends that the district court erred by (1) admitting evidence of a witness' prior inconsistent statement; (2) admitting an English transcript of a recorded Spanish conversation; and (3) denying admission of a letter allegedly written by one witness to another witness. The government cross-appeals Armijo's sentence under the Sentencing Guidelines, assigning as error the reduction in his base offense level for acceptance of responsibility. We affirm.

## FACTS AND PRIOR PROCEEDINGS

Armijo's conviction resulted from a Drug Enforcement Agency (DEA) sting operation in which Jose Contreras sold a kilogram of cocaine to undercover agents. Contreras disclosed his supplier as Armijo. Contreras and his girlfriend, Michelle Massengale, engaged Armijo in two recorded telephone conversations that disclosed his involvement in the transaction. The DEA obtained search warrants for Armijo's home, vehicles, and his parents' home. At trial, the evidence against Armijo consisted primarily of Contreras' testimony against Armijo, the recorded conversations, and pager records reflecting that Armijo received an extraordinary number of messages each month. The defense theory was that Contreras identified Armijo as his source in order to protect the true source, Contreras' uncle, Santiago Avina. The jury found Armijo guilty of distribution of cocaine.

## DISCUSSION

### 1. *Admission of Out of Court Statement*

#### a. *Hearsay*

Armijo argues that the district court erred by failing to give a limiting instruction regarding Michelle Massengale's prior statement that Armijo had admitted to her that he supplied the cocaine delivered by Contreras. On direct examination, Massengale denied that she had previously identified Armijo as the cocaine supplier. The government asked Massengale about her previous written statement in which she had identified Armijo as the source for the cocaine. She testified that the written statement was incorrect. Massengale's written statement was admitted as an exhibit and was also introduced in the testimony of two FBI agents. One of the agents testified that he had read the written statement to Massengale, allowed her to review it, and gave her an opportunity to make changes. Both agents testified that Massengale had previously identified Armijo as the source of the cocaine.

■ Armijo contends that the district court committed plain error by failing to give a limiting instruction informing the jury that evidence of Massengale's prior inconsistent statement could be used only to impeach her character for truthfulness and could not be used as evidence of Armijo's guilt. A prior inconsistent statement is not hearsay and may be admitted as substantive evidence if the declarant testifies at trial subject to cross examination and the statement was given under oath at a trial, hearing, or other proceeding, or in a deposition. Fed.R.Evid. 801(d)(1)(A); *United States v. Vargas*, 933 F.2d 701, 705 (9th Cir.1991). Massengale's prior inconsistent statement was inadmissible under Rule 801(d)(1)(A), however, because it was not given under oath. Since Armijo did not request a limiting instruction, *see* Fed. R.Evid. 105, the question is whether the district court committed plain error in failing to give sua sponte the instruction. *See United States v. Hoac*, 990 F.2d 1099, 1108 (9th Cir.1993); *see also* Fed.R.Crim.P. 52(b).

We have authority to correct the error here only if it is "plain" and "affect[s] substantial rights." *United States v. Olano*, — U.S. —, —, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993) (quoting Rule 52(b)). We are not to exercise our discretion to correct a plain forfeited error affecting substantial rights unless it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* at —, 113 S.Ct. at 1779 (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)). Improper jury instructions will rarely justify a finding of plain error. *Hoac*, 990 F.2d at 1108; *United States v. Bustillo*, 789 F.2d 1364, 1367–68 (9th Cir.1986).

Armijo argues that *United States v. Ragghianti*, 560 F.2d 1376, 1379–81 (9th Cir. 1977), controls this case. In *Ragghianti*, the defendant was charged with aiding and abetting a bank robbery. The defendant was never seen during the robbery but was observed with the bank robber in the back seat of the defendant's car, some 15 or 20 minutes later. *Id.* at 1377–78. Two witnesses including the bank robber corroborated the defendant's alibi that he was shopping when the bank was robbed. The defendant's claim of alibi was his sole defense. One of the corroborating witnesses testified that she did not remember making statements to FBI agents. An FBI agent testified, without ob-

jection, about statements made by the witness that contradicted her testimony as well as the defendant's testimony about his alibi. The court ruled that admission of hearsay evidence of the witness' prior inconsistent statements without limiting instructions was plain error. *Id.* at 1381.

We first note that our ruling in *Ragghianti* on the prior inconsistent statement was dictum and is therefore not binding. We stated that our reversal was based on the failure to give an alibi instruction, and we discussed the prior inconsistent statement issue "in the interest of an error-free retrial." *Id.* at 1377. Furthermore, our ruling was based on the fact that the sole contested issue was the defendant's claim of alibi, which had to "stand or fall on the question of credibility." *Id.* at 1381. Because the witness' prior inconsistent statement in *Ragghianti* was apparently the only evidence that contradicted the defendant's and the witness' testimony, the error was likely so prejudicial that it tainted the jury verdict. *See Hoac,* 990 F.2d at 1108. Here, in contrast, as discussed below, there was other evidence presented that did not depend on Massengale's credibility that the jury could have relied on to convict Armijo.

■ Moreover, the precedential value of *Ragghianti* is questionable because the Supreme Court has recently clarified the review for plain error. *Olano,* —— U.S. at ——, 113 S.Ct. at 1776–81. First, there must be a forfeited error rather than a waiver. *Id.* at ——, 113 S.Ct. at 1777. Second, the error must be "plain" in that it was clear under current law. *Id.* Third, the error must affect substantial rights. *Id.* at ——, 113 S.Ct. at 1777–78. The defendant bears the burden of persuading us that the error was prejudicial, that is, that it affected the outcome of the district court proceedings. *Id.* at ——, 113 S.Ct. at 1778. If the forfeited error is plain and affects substantial rights, we have authority to exercise our discretion but we are not required to do so. *Id.* We should exercise our discretion when the error " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *Id.* at ——, 113 S.Ct. at 1779 (quoting *Atkinson,* 297 U.S. at 160, 56 S.Ct. at 392).

■ In this case, there was a forfeited error rather than a waiver and that error was "plain" under current law. Hearsay is admissible as substantive evidence only as provided by the Federal Rules of Evidence. *United States v. Tafollo–Cardenas,* 897 F.2d 976, 979 (9th Cir.1990). Thus, our focus is on the third limitation on our authority to correct the error, whether the error affected substantial rights. *See Olano,* —— U.S. at ——, 113 S.Ct. at 1777–78.

■ In light of the other evidence presented at trial, we conclude that Armijo did not meet his burden of making a specific showing of prejudice to satisfy the "affecting substantial rights" prong of Rule 52(b). *See Olano,* —— U.S. at ——, 113 S.Ct. at 1778. When Contreras was arrested, he told the agents that Armijo was his source of cocaine, and he testified to that fact at trial. Grant Kasselder, a friend of Armijo's, was arrested with Contreras and was found carrying a gun. Armijo admitted at trial that the "grips" on that gun were his and that he had placed them on the gun.

In a recorded telephone conversation between Contreras and Armijo, Armijo disclosed his knowledge of the transaction and expressed concern for his identity. Without prior references by Contreras, Armijo expressed knowledge and concern over the gun, asked whether Kasselder had had "anything on him," asked if Contreras was "in that guy's room or what," asked whether "they [the police] took they [sic] guy away with all the shit," and asked whether they busted him "with the stuff." Armijo also asked Contreras if he had said "anything about me" and whether "they [the police] think it's somebody else." After Armijo realized that the police were listening to the conversation, he said "Well, I didn't give you NOTHING."

In a recorded conversation between Massengale and Armijo, Armijo expressed further concern that the police knew of his involvement. He asked "Do you think they're watching me?" and said "I don't know if they got are [sic] on to me or not." Armijo also asked "But they are looking for someone else?" and asked whether the police said "anything like they had an arrest for me

too." Armijo told Massengale to tell Contreras "not to worry about the money" and warned her to tell Contreras that "its not worth him, ah, saying anything because they're gonna give what they've [sic] gonna give him anyway." When Massengale asked "Do you know how much he got caught with?" Armijo replied "Yeh."

After Armijo's arrest, a search of his house revealed Contreras' pager number in Armijo's wallet and a digital pager in the garage. The pager that Armijo testified was in his possession "most of the time" in the month before August 4, 1989 received 715 pages between July 23, 1989 and August 7, 1989. A witness testified that the average number of pages in one month per pager is "in the 30's."

The determination of Armijo's guilt was not solely dependent on Massengale's credibility. In addition to Contreras' testimony implicating Armijo, the most damaging evidence against Armijo is his participation in two tape recorded conversations. We conclude that Armijo did not meet his burden of making a specific showing of prejudice under Rule 52(b). Therefore, the error did not affect "substantial rights," and we have no authority to correct the error. *See Olano*, —— U.S. at ——, 113 S.Ct. at 1778, 1781.

### b. *Confrontation Clause*

 Relying on *United States v. McKinney*, 707 F.2d 381 (9th Cir.1983), Armijo contends that the admission of Massengale's statement and the agents' oral testimony violated his Sixth Amendment right to confront witnesses against him. Armijo's reliance on *McKinney* is misplaced. In that case, the declarant did not testify at the defendant's trial and had testified earlier that she had no recollection of the statement at issue. *Id.* at 382–83. When a declarant is present at trial and subject to cross-examination, the declarant's out of court statement does not create a confrontation problem. *See United States v. Owens*, 484 U.S. 554, 557–61, 108 S.Ct. 838, 841–44, 98 L.Ed.2d 951 (1988); *Nelson v. O'Neil*, 402 U.S. 622, 626–30, 91 S.Ct. 1723, 1725–28, 29 L.Ed.2d 222 (1971); *Vargas*, 933 F.2d at 705–06. Here, declarant Massengale was present as a witness and was subject to cross-examination.

The admission of Massengale's prior statement did not violate the confrontation clause.

### 2. *Admission of English Transcript of Spanish Conversation*

Armijo argues that the court erred in admitting a transcript of a recorded Spanish telephone conversation between him and Contreras because the translation was inaccurate. Armijo's argument is based primarily on his incorrect assertion that the tape itself was never admitted into evidence. Both the tape and the transcript were admitted.

 The use of transcripts as an aid in listening to tape recordings is reviewed for an abuse of discretion. *United States v. Taghipour*, 964 F.2d 908, 910 (9th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 283, 121 L.Ed.2d 210 (1992). We review steps taken to ensure the accuracy of the transcripts: whether the court reviewed the transcript for accuracy; whether defense counsel was allowed to highlight alleged inaccuracies and to introduce alternative versions; whether the jury was instructed that the tape, rather than the transcript, was evidence; and whether the jury was allowed to compare the transcript to the tape and hear counsel's arguments as to the meaning of the conversations. *See United States v. Chen*, 754 F.2d 817, 824 (9th Cir.), *cert. denied*, 471 U.S. 1139, 105 S.Ct. 2684, 86 L.Ed.2d 701 (1985).

 In this case, the trial judge did not review the tape for accuracy because he was not fluent in Spanish and there was no agent involved in the conversation who could testify to its accuracy. The conversation was translated twice—the first time was to produce a working copy and the second time it was translated for trial purposes by a court translator. The translator testified that the transcript accurately reflected the conversation on the tape. Armijo had access to the tape before trial, but he chose not to submit his own translation or present an expert witness to contest the transcript's accuracy. The court reminded Armijo on more than one occasion that he had the right to call his own expert to translate the tape. The jury listened to the tape while they read the tran-

script and it was instructed that the tape, rather than the transcript, was the evidence. Armijo's attorney extensively cross-examined the translator on the accuracy of her translation, particularly as to discrepancies between the first and second translations. Armijo had an opportunity to testify on direct and cross-examination about his understanding of the conversation. Armijo's attorney argued the meaning of the conversation in his closing argument. Under these circumstances, we conclude that the district court did not abuse its discretion in admitting the transcript.

▮▮ Armijo also contends that the court erred by not requiring the translator to take an oath or affirmation before testifying. In *United States v. Taren–Palma,* 997 F.2d 525, 532 (9th Cir.1993) (per curiam), we held that Federal Rule of Evidence 604 applies only to interpreters who translate the testimony of witnesses on the stand and does not apply to language experts. In other situations, the standard oath for witnesses applies. *Id.* Federal Rule of Evidence 603 provides that "every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so."

In this case, the district court asked the translator to swear that she "translated the tape that is in issue here today from Spanish to English to the best of [her] ability." She did so and also later explained that as a court translator she is subject to a standing oath "so it doesn't have to be done every time I appear in Court." Armijo nevertheless argues this was insufficient to satisfy the requirements of Rule 603 since the translator appeared as a witness and was subjected to direct and cross examination. Armijo did not make that argument to the district court and, accordingly, we review for plain error. *See Hoac,* 990 F.2d at 1108.

We conclude that there was no error, and certainly no plain error, in the court's failure to administer the more specific oath now advanced by Armijo. First, there is no constitutional or statutorily required form of oath. *United States v. Ward,* 989 F.2d 1015, 1019 (9th Cir.1992). Second, the oath that was administered in our minds would have impressed upon the translator the importance of truthful and accurate translation. Her testimony and the direct and cross examination that followed merely tested the accuracy and validity of her translation, not her credibility or veracity as a witness. There was no error.

### 3. *Admission of Letter*

▮ Armijo contends that the court erred in denying admission of a letter from Contreras to Massengale that "was strongly probative of Contreras' motive to lie to protect his uncle," Santiago Avina. The defense theory was that Contreras lied about receiving the cocaine from Armijo when he was arrested in order to protect his uncle. The court denied admission of the letter on the ground of relevance, finding that the letter was not related to Armijo or the case against him.

"Relevant evidence" is evidence having any tendency to make a fact of consequence more or less probable. Fed.R.Evid. 401. We review for abuse of discretion. *United States v. Schaff,* 948 F.2d 501, 505 (9th Cir.1991). Because the letter was written eight months after the arrest and referred to a dispute between Massengale and Contreras' sister, the district court did not abuse its discretion in denying its admission.

### 4. *Cross–Appeal: Acceptance of Responsibility*

The government cross-appeals the court's finding that Armijo was entitled to a reduction in his offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) (1989). It argues that there was no indication of "sincere contrition" by Armijo before or after his conviction.

▮ The Sentencing Guidelines provide for a two level reduction "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1(a). We review for clear error. *United States v. Gonzalez,* 897 F.2d 1018, 1019 (9th Cir.1990). A defendant whose guilt was determined by a court or jury is not precluded from receiving a reduction. *Unit-*

*ed States v. Barron–Rivera,* 922 F.2d ·549, 552–53 (9th Cir.1991); U.S.S.G. § 3E1.1(b). In determining acceptance of responsibility, the sentencing court "may not consider against the defendant any constitutionally ·protected conduct." *United States v. Sitton,* 968 F.2d 947, 962 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1306, 122 L.Ed.2d 695 (1993).

 At sentencing, Armijo's testified that his attorney had advised him that he should not detail his participation or the extent of his involvement because he could expose himself to additional criminal charges. He also testified that he had remorse for his involvement and accepted responsibility for the transaction. "[T]he determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation." U.S.S.G. § 3E1.1, comment. (n. 5). We conclude that the sentencing judge had adequate foundation to determine that Armijo was entitled to a reduction for acceptance of responsibility.

**AFFIRMED.**

ALARCON, Circuit Judge, dissenting:

The majority's holding today permits a judgment of conviction to stand where "the most damaging evidence" against the defendant was presented through the testimony of an expert witness who was not sworn to testify truthfully and was not reminded of the penalty for perjury. Because I believe that a conviction based on the unsworn testimony of a key witness violates the defendant's Sixth Amendment right to meaningful confrontation, I respectfully dissent.

**I.**

The majority concludes that "there was no error, and certainly no plain error" in the court's failure to administer a specific witness oath to Ms. Ahrens. Maj. opinion at · 1235. I disagree. As the majority correctly notes, there is no constitutional or statutorily · required form of oath. *United States ·v. Ward,* 989 F.2d 1015, 1019 (9th Cir.1992). We have stated that "any statement indicat-

ing that the [witness] is impressed with the duty to tell the truth and·understands that he or she can be prosecuted for perjury for failure to· do so satisfies the requirement for an oath or affirmation...." *Gordon v. Idaho,* 778 F.2d 1397, 1400 (9th Cir.1985). The oath formulated by the district court and administered to Ms. Ahrens, however, satisfied neither of these requirements. The district court merely asked Ms. Ahrens: "Do you swear that you *have translated* the tape that is in issue here today from Spanish to English to the best of your ability so help you God?" (emphasis added). The court did not remind Ms. Ahrens of her duty to tell the truth *while on the stand,* nor did it inform her that she would face imprisonment if she testified falsely.

The majority reasons that it was unnecessary to administer the standard witness oath to Ms. Ahrens because "[h]er testimony and the direct · and cross examination that followed merely tested the accuracy and validity of her translation, not her credibility or veracity as a witness." Maj. opinion at 1235. The record, however, belies this conclusion. The trial transcript contains over thirty pages of extensive cross-examination of Ms. Ahrens during which defense counsel attempted to impeach the veracity of her testimony concerning her translation of the taped conversations. Because none of the jurors understood Spanish, Ms. Ahrens' credibility and the veracity of her testimony were clearly critical factors for the jury to consider in determining Armijo's culpability.

The majority further relies on Ms. Ahrens' testimony that, as an interpreter, she is subject to a standing oath "so it doesn't have to be done every time [she] appear[s] in Court," .to support its conclusion that Ms. Ahrens was properly sworn as a witness. *Id.* at 1235. The text of this standing interpreter's oath, however, is not set forth in the record. Accordingly, we have no way of determining whether the standing oath she received reminded.her of her duty to tell the truth while testifying as a witness, and whether it apprised her of the punishment for testifying falsely.[1] Moreover, we have held that the

---

1. The Interim Regulations Implementing the Court Interpreters Amendments Act of 1988, pro-

standing interpreters' oath is inapplicable where the translator takes the stand to testify as a witness. *See United States v. Taren–Palma,* 997 F.2d 525, 532 (9th Cir.1993) (per curiam) (translator who testifies as a witness is subject to standard witness oath, not the interpreter's oath). Because the district court failed to administer a standard witness oath to Ms. Ahrens, as required by the law of this circuit as explained in *Taren–Palma,* I cannot join my brethren in their conclusion that the trial court did not err.

## II.

We have not previously considered the question whether the failure to swear a witness in a criminal case violates a defendant's constitutional rights. Other circuits have labeled the failure to administer the standard witness oath an "irregularity" that is waived on appeal if not promptly objected to in the trial court. *United States v. Odom,* 736 F.2d 104, 114 (4th Cir.1984) ("It is well settled that the swearing of a witness is waived by failure to raise the point during the witness' testimony, thus denying the trial court an opportunity to correct what has been characterized as an 'irregularity.' "); *see also United States v. Perez,* 651 F.2d 268, 273 (5th Cir.1981) ("It has long been the general rule that even a failure to swear a witness may be waived."); *Wilcoxon v. United States,* 231 F.2d 384, 387 (10th Cir.) (By failing to bring the lack of an oath to the attention of the court at the time the witness testified, the defendant waived the right to seek a new trial on that ground), *cert. denied,* 351 U.S. 943, 76 S.Ct. 834, 100 L.Ed. 1469 (1956); *Beausoliel v. United States,* 107 F.2d 292, 294 (D.C.Cir.1939) ("[W]e are of the opinion that the irregular administration of the oath to a witness, or the taking of testimony without an oath at all, must, if known to the adverse party, be objected to at the time. [A defendant] may not, with knowledge of the irregularity, permit the trial to proceed, and raise the question after the verdict.") (internal quotation marks and citation omitted).

In my view, the failure to impress upon an essential witness his or her duty to testify truthfully or face a penalty for perjury cannot be passed off as a mere "irregularity." The Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him. *Maryland v. Craig,* 497 U.S. 836, 842, 110 S.Ct. 3157, 3162, 111 L.Ed.2d 666 (1990). The right to confrontation includes not only the right to cross-examine witnesses, but also insures "that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury." *Id.* at 845, 110 S.Ct. at 3163 (quoting *United States v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970)). To label the failure to swear an essential witness against a defendant in a criminal case an "irregularity," as was done in cases decided prior to *Maryland v. Craig,* is to ignore the teaching of the Court that the failure to administer an oath reminding the witness that he or she must testify truthfully or face the penalty of imprisonment denies a criminal defendant his right to meaningful confrontation under the Sixth Amendment.

Having established that the failure to administer an oath to a witness that sufficiently reminds him or her of the duty to testify truthfully and the consequences of perjury violates the Constitution, I now address the type of constitutional error that occurs in these circumstances. The Supreme Court has identified two kinds of constitutional error in a criminal proceeding—structural error and trial error. *Arizona v. Fulminante,* 499 U.S. 279, ——, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991). Structural errors are "defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards." *Id.* Examples of structural error include the denial of an impartial tribunal, the denial of counsel, *id.,* and the failure to give a reasonable doubt instruction to the jury. *Sullivan v. Louisiana,* —— U.S. ——, 113 S.Ct. 2078, 2083, 124 L.Ed.2d 182 (1993). These errors are structural because "[w]ithout these basic protections, a criminal trial

mulgated by the administrative office of the United States Courts, suggests the following oath be given to court interpreters: "Do you swear (or

affirm) that in the case now in hearing you will interpret truly the testimony you are called upon to interpret, so help you God?"

cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." *Fulminante,* 499 U.S. at ——, 111 S.Ct. at 1265 (quoting *Rose v. Clark,* 478 U.S. 570, 577–78, 106 S.Ct. 3101, 3105–06, 92 L.Ed.2d 460 (1986)). Trial errors, in contrast, impact a defendant's constitutional rights without destroying the trial's basic structure. *Standen v. Whitley,* 994 F.2d 1417, 1422 (9th Cir.1993) (citing *Arizona v. Fulminante,* 499 U.S. at ——, 111 S.Ct. at 1264–65). The erroneous admission of evidence is a classic example of trial error. *Fulminante,* 499 U.S. at ——, 111 S.Ct. at 1265.

The failure to swear witnesses is not simply an error in the admission of evidence. Rather, such a defect undermines the basic truth-seeking function of the entire criminal trial. Our adversary system of justice has embraced the belief that the best mechanism to elicit the truth is to impress witnesses with the duty to testify truthfully and admonish them of the penalty for perjury. *See* VI John H. Wigmore, Evidence in Trials at Common Law, § 1817 (James H. Chadbourn rev. ed. 1976) ("By ... laying hold of the conscience of the witness and appealing to his sense of accountability, the law best insures the utterance of truth.") (internal quotation marks and citation omitted); *United States v. Turner,* 558 F.2d 46, 50 (2d Cir. 1977) ("[T]hose who have been impressed with the moral, religious or legal significance of formally undertaking to tell the truth are more likely to do so than those who have not made such an undertaking or been so impressed."). Without the administration of the oath, a witness could feel free to lie with impunity without any fear of punishment for testifying falsely. *See* 18 U.S.C. § 1621 (crime of perjury is dependent on whether the testimony was given under oath or affirmation). Thus, I question whether a criminal trial in which a defendant has been deprived of the basic protection that the prosecution's witnesses will be subject to imprisonment if they testify falsely, has reliably served "its function as a vehicle for [the] determination of guilt or innocence." *Fulminante,* 499 U.S. at ——, 111 S.Ct. at 1265

(internal quotation marks and citation omitted).

I do not suggest that the failure to swear every kind of witness should automatically compel reversal. The situation presented in this case differs sharply from circumstances where a witness merely provides ministerial evidence. For example, the failure to swear a witness called to establish the chain of custody, a custodian of records, or any other person whose testimony provides no percipient evidence tending to prove guilt, probably should not compel reversal. Where the court fails to swear a witness whose testimony is critical to establishing the defendant's culpability, however, the judgment of conviction should not be permitted to stand.

Because I speak only for myself, I cannot enter a judgment holding that the failure to swear an essential witness constitutes structural error requiring automatic reversal. Under existing law, however, I am compelled to conclude that reversal is mandated in this case even under the more liberal standard of plain error. *See United States v. Nazemian,* 948 F.2d 522, 525 (9th Cir.1991) (In the absence of a timely objection, we review allegations of a Confrontation Clause violations under the plain error doctrine because a failure to comply with the Confrontation Clause infringes on substantial rights), *cert. denied,* —— U.S. ——, 113 S.Ct. 107, 121 L.Ed.2d 65 (1992). We will reverse for plain error in those circumstances where it "appears necessary to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process." *United States v. Paris,* 827 F.2d 395, 398 (9th Cir.1987).

The majority concludes that the "most damaging evidence" against Armijo were the tape recorded conversations. Maj. opinion at 1234. The majority then attempts to diminish the importance of Ms. Ahrens' testimony by reasoning that the "jury was instructed that the tape, rather than the transcript, was the evidence." Maj. opinion at 1234. I agree that Ms. Ahrens' translation of the tape recorded conversations contained the most damaging evidence against Armijo. The record, however, reflects that the jury did not understand Spanish. Because the tape recorded conversations were in Spanish,

the jury could not compare Ms. Ahrens' translation with the tapes to determine what was said. Thus, Ms. Ahrens' testimony concerning the accuracy of her translation was critical to establishing Armijo's culpability. Because I believe that a conviction based on the unsworn testimony of a key witness against the defendant violates the Confrontation Clause, constitutes a miscarriage of justice even in the absence of a timely objection, and is a classic example of a defect in the truth-seeking mechanism of the judicial process, I would reverse.