142 F.3d 447
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Daniel WHITECOTTON, Defendant-Appellant.
 No. 97-30108.
D.C. No. CR-96-00017-PGH.
 United States Court of Appeals,
Ninth Circuit.
 .
Argued and Submitted December 2, 1997.
Decided April 29, 1998.
 
 Appeal from the United States District Court for the District of Montana Paul G. Hatfield, District Judge, Presiding.
 Before REAVLEY,* BOOCHEVER, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Daniel Whitecotton appeals from his conviction for conspiracy and possession with intent to distribute methamphetamine and cocaine. He claims insufficient evidence and a variety of other errors in his trial. We address his sentencing issue separately in a published opinion.
 
 I. Sufficiency of the evidence
 
 3
 Whitecotton moved for a judgment of acquittal at the close of the evidence. On appeal, he argues that the jury had insufficient evidence to support his conviction. This court reviews a claim of insufficient evidence to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Bahena-Cardenas, 70 F.3d 1071, 1072-73 (9th Cir.1995) (quotations omitted).
 
 
 4
 There was more than ample evidence in this case. The jury heard tapes of the drug transactions on April 17 and 18. The defense itself put the tapes into evidence, and Whitecotton, on the stand, identified his voice and stated "I could have been there, but I don't recall every--every step to the events that occurred.... It sounds like I was there...." [ER pp. 70-71] Narcotics Agent Ken Poteet and Matthew Lineberry, Whitecotton's supplier for the second sale on April 18, both testified as percipient witnesses for the government. The government presented the drugs purchased during the two sales to Agent Poteet and had an expert identify them. The government's evidence was not only sufficient, it was strong.
 
 A. Entrapment
 
 5
 Whitecotton argues, however, that the jury should have acquitted him or found him guilty only of simple possession because he was entrapped. At trial, Whitecotton argued entrapment, and the jury was instructed on the defense. "There are two elements to the defense of entrapment: (1) government inducement of the crime, and (2) the absence of predisposition on the part of the defendant." United States v. Davis, 36 F.3d 1424, 1430 (9th Cir.1994), cert. denied, 513 U.S. 1171, 115 S.Ct. 1147, 130 L.Ed.2d 1106 (1995). Entrapment is generally a question for the jury, and its finding should not be disturbed "unless, viewing the evidence in the light most favorable to the government, no reasonable jury could have concluded that the defendants were predisposed to commit the charged offenses.... [and] there must be undisputed evidence that [the defendant was] induced to commit crimes by the government." Id. at 1430-31.
 
 
 6
 There was more than sufficient evidence of Whitecotton's predisposition. Whitecotton testified that he had possessed and used drugs with CI Maddox and with Lineberry, and that Lineberry supplied him with drugs. [ER p. 66] Whitecotton arranged the second drug sale on April 18, and did not testify to any reluctance to engage in the sale, nor did any other evidence show any reluctance to supply drugs to Agent Poteet. See id. at 1430 (most important factor for showing lack of predisposition is reluctance to engage in criminal activity). The jury also knew of Whitecotton's long drug use, and the tapes show his familiarity with his supplier. There was sufficient evidence that Whitecotton was not entrapped.
 
 B. Diminished capacity
 
 7
 Whitecotton also argues that the jury should have concluded that he had a severe mental defect that made him unable to appreciate the nature and wrongfulness of his acts. The jury was instructed on this defense theory.
 
 
 8
 A defense psychologist offered expert testimony at Whitecotton's trial that due to long drug use and a head injury, Whitecotton had a mental age of 11, had no short-term memory, and did not know right from wrong. [ER p. 61] The defense argued that this made Whitecotton incapable of carrying out a business transaction such as a drug deal. [ER p. 63]
 
 
 9
 Yet the tapes of the drug deals showed Whitecotton participating coherently in negotiating amounts and prices for the drugs; he testified that he had bought a car, and could do simple math to estimate prices [ER p. 70]; and his testimony showed him to be articulate and that he understood the proceedings. There was sufficient evidence for the jury to reject his defense of mental defect or diminished capacity.
 
 II. Conduct of trial
 A. Tape transcripts
 
 10
 The defense introduced the tapes into evidence. Because parts of the tapes were somewhat unintelligible, the court gave the jury transcripts of the tapes, explaining that they were not in evidence: "The recording itself is the evidence. But if you have to go to the--to these transcripts to help yourself, then you can do that." Whitecotton's counsel objected: "[a]ctually, Your Honor, we were hoping that if there was some difficulty in identification--because we do object to the transcripts--because we don't know who made the transcript and how they were made. And the tapes we hope speak for themselves." [ER p. 67] Agent Poteet testified that he reviewed the tapes and that they accurately reflected what he heard and remembered, and that the transcripts accurately reflected what was on the tapes. They had been transcribed by a secretary in his office and corrected by Agent Poteet, listening to the tapes. [ER p. 73] Whitecotton's counsel later stated that "the tapes--the testimony is actually further continued in terms of the transcripts, and though I agree I am sure they tried to make a good effort, I think the tapes speak for themselves." [ER p. 77]
 
 
 11
 "The use of transcripts as an aid in listening to tape recordings is reviewed for an abuse of discretion." United States v. Armijo, 5 F.3d 1229, 1234 (9th Cir.1993).
 
 
 12
 We review steps taken to ensure the accuracy of the transcripts: whether the court reviewed the transcript for accuracy; whether defense counsel was allowed to highlight alleged inaccuracies and to introduce alternative versions; whether the jury was instructed that the tape, rather than the transcript, was evidence; and whether the jury was allowed to compare the transcript to the tape and hear counsel's arguments as to the meaning of the conversations.
 
 
 13
 Id.
 
 
 14
 In this case, although it does not appear from the record that the court itself reviewed the transcript for accuracy, Whitecotton's counsel did not highlight any specific inaccuracies, or introduce the defense's own transcript, although he had access to the tapes. The jury was instructed more than once that the tapes, not the transcripts, were the evidence, and was encouraged to compare the two. Whitecotton's counsel was not prevented from arguing an alternative interpretation of the taped conversations.
 
 
 15
 Whitecotton argues that the taped conversations could not have taken place where Agent Poteet said they did because Whitecotton and CI Maddox referred to someone as "Mom." A reading of the transcripts suggests that Whitecotton and Maddox used "Mom," perhaps sarcastically, to refer to Mary Jo, Whitecotton's female roomate. [ER pp. 104-05, 127]
 
 
 16
 It was not an abuse of discretion to allow the jury to use the transcripts.
 
 B. Aiding and abetting instruction
 
 17
 Whitecotton acknowledges that the indictment need not include a charge of aiding and abetting for a conviction to be obtained on that theory, but argues that his counsel first realized that an aiding and abetting instruction would be given to the jury the day before the instructions were submitted. Whitecotton contends that he would not have testified that he was present at the transactions had he known that the jury would be instructed on aiding and abetting. Because Whitecotton's counsel did not object to the instruction, this court reviews for plain error. United States v. Fagan, 996 F.2d 1009, 1016 (9th Cir.1993).
 
 
 18
 No plain error occurred. First, Whitecotton's counsel was not ambushed by the aiding and abetting instruction. The prosecution submitted its proposed instructions, including the aiding and abetting instruction, a week before trial. Whitecotton's counsel therefore was on notice before trial that aiding and abetting was a possible instruction, and was in no way prevented from arguing against an aiding and abetting theory to the jury. See United States v. Gaskins, 849 F.2d 454, 458 (9th Cir.1988) (court must inform trial lawyers of instructions fairly, so they may argue case intelligently to jury).
 
 
 19
 Further, even if Whitecotton had not testified, there was evidence in the form of the tapes and in the testimony of CI Maddox and Lineberry that Whitecotton was present and arranged the drug transaction between Lineberry and Agent Poteet. AFFIRMED IN PART.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 *
 Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit Court of Appeals, sitting by designation