UNITED STATES of America,
Plaintiff–Appellee,

v.

Mariano Serratos BELTRAN,
Defendant–Appellant.

No. 97–30348.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 15, 1998.

Decided Jan. 25, 1999.

As Amended March 26, 1999.

Mark Sabitt, Eugene, Oregon, for the defendant-appellant.

Kristine Olson, United States Attorney, Sean B. Hoar, Assistant United States Attorney, Eugene, Oregon, for the plaintiff-appellee.

Before: J. CLIFFORD WALLACE and ALEX KOZINSKI, Circuit Judges, and DAVID ALAN EZRA,* District Judge.

Opinion by Judge EZRA; Concurrence by Judge KOZINSKI.

EZRA, District Judge:

Appellant Mariano Serratos–Beltran ("Appellant") appeals his jury conviction and sentence for possession with intent to distribute more than 100 grams of heroin, possession with intent to distribute methamphetamine, and use of a person under 18 years of age in violation of 21 U.S.C. §§ 841(a)(1) and 861(a)(2). This court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

On December 12, 1996, a federal grand jury returned an indictment charging Appellant with possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1). On January 15, 1997, a superseding indictment was returned charging Appellant with possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), and with using a person under 18 years of age to distribute heroin in violation of 21 U.S.C. § 861(a)(2), in addition to the earlier charge. On July 7, 1997, Appellant was found guilty by jury verdict of all counts in the superseding indictment. He was sentenced to serve a 235 month term of imprisonment.

The facts surrounding charges in the superseding indictment occurred on December 9, 1996. On that date, an informant working with Detective Bloom of the Lane County Interagency Narcotics Enforcement Team ("INET"), arranged to purchase eight ounces of heroin from Appellant through Donald Huglen ("Huglen"). James Johnson ("Johnson") drove Appellant and his girlfriend, Maxima Cano Rodriguez ("Rodriguez"), to Huglen's home in Appellant's vehicle. Johnson and Appellant entered Huglen's home. At that time Huglen ordered heroin, however, for some reason there was a misunderstanding, and Appellant told Rodriguez that Huglen had ordered methamphetamine.

On the way to pick up the methamphetamine, Johnson dropped Appellant off at a Mexican restaurant, and then drove Rodriguez to Appellant's residence. Once at the residence, Rodriguez instructed her eleven-year-old child to tell Johnson to park his car in the back of the residence. Rodriguez then told the child[1] to have Johnson open the hood of the vehicle. Thereafter, Rodriguez placed a plastic wrapped package containing methamphetamine in the battery compart-

---

* The Honorable David Alan Ezra, Chief United States District Judge for the District of Hawaii, sitting by designation.

1. The name of the child has been omitted due to his age.

ment of the vehicle. Rodriguez, Johnson and the child got in the car and Johnson drove to pick up Appellant, and then drove to Huglen's residence. Once they reached Huglen's residence, Huglen informed them that he wanted heroin and not methamphetamine.

Johnson, Rodriguez, the child, and Appellant left Huglen's residence, and went to the house of an individual named Chaparro. At Chaparro's residence they obtained eight ounces of heroin, and Chaparro and another individual named David Maldenado, joined them as they went to meet Huglen in a Safeway parking lot. Appellant, Johnson and Rodriguez met with Huglen in the parking lot, and waited for Huglen's customer to bring the money. Appellant then became concerned that the police were in the neighborhood, and told Johnson to get back in the car and drive them away.

The transaction was being observed by INET detectives, and at this point a patrol officer was requested to stop Appellant's car. As the car was being stopped, Appellant handed the heroin to the child and told him to place it in his pocket. Appellant gave permission to search the vehicle, and the INET agents found 221.9 grams of methamphetamine in the engine compartment, and 173.2 grams of heroin and 2.8 grams of methamphetamine inside the child's jacket. A search of Appellant's home also revealed gram quantities of heroin in the kitchen, bathroom and living room.

After conviction, the district court determined that the base offense level was 30 pursuant to §§ 2D1.1 and 2D1.2 of the Sentencing Guidelines. The district court aggregated the weight of the drugs found in the vehicle and on the child with that found in the residence to determine the base offense level. The district court added two levels for conduct involving a minor pursuant to § 2D1.2(a)(1) of the Sentencing Guidelines. Moreover, the district court included a two-level increase based upon his finding that Appellant had supervised the activities of at least two other individuals pursuant to § 3B1.1 of the Sentencing Guidelines. Thus, the total offense level was determined to be 34. Appellant's criminal history category was calculated at III resulting in a guideline

range of 188 to 235. The district court sentenced Appellant to 235 months. Appellant objected to the two-level enhancement for use of an underage individual, and the two-level enhancement for a supervisory role.

I. *Did the District Court Err in Finding That the Child's Consistent Statements Were Not Hearsay?*

Appellant insists that the district court erred in admitting testimony regarding the child's consistent statements. At trial, the child testified that after Johnson, Appellant, Rodriguez, and he got back into the car in the Safeway parking lot, Johnson gave the heroin to Appellant. E.R. at 82. The child also explained that after they noticed the police, and the police lights were on, Appellant handed the heroin to him and told him to put it in his pocket. *Id.* Subsequent to the child taking the stand, the Government, using Detective Bloom and Detective Thoming, offered the child's prior consistent statements, the statements that the child had made to them at the time Appellant's vehicle was stopped by the police. The district court allowed the testimony over Appellant's objection.

▮▮▮ Evidentiary rulings are reviewed for an abuse of discretion, and should not be reversed absent some prejudice. *EEOC v. Pape Lift, Inc.,* 115 F.3d 676, 680 (9th Cir. 1997). Even if this court finds error, it should not reverse "if it is more probable than not that the prejudice resulting from the error did not materially affect the verdict." *United States v. Lui,* 941 F.2d 844, 848 (9th Cir.1991). The relevant evidentiary issue here is whether the prior consistent statements were properly admitted. Federal Rule of Evidence 801(d)(1)(B) provides that prior consistent statements are not hearsay if they are offered "to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." In order to be considered non-hearsay under Rule 801(d)(1)(B),

(1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or

motive of the declarant's testimony; (3) the *proponent must offer a consistent* statement that is consistent with the declarant's challenged in-court testimony; and, (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose.

*United States v. Collicott,* 92 F.3d 973, 979 (9th Cir.1996).

■ At trial, when the Government began eliciting the testimony from Detective Bloom and Detective Thoming, Appellant's counsel objected on hearsay grounds. The court overruled the objections and gave a clear limiting instruction explaining to the jury that the testimony regarding the child's prior statements could only be used in considering the witness's credibility. The court notes that the limiting instruction given by the district court is incorrect on the law. Normally when prior consistent statements are admitted, the admission is not for the limited use of determining credibility, but may be used as substantive evidence. However, since the district court gave the limiting instruction, even if the statements were improperly admitted, this court must assume that the jury carefully listened to the instruction offered by the district court, and used the statements solely for the purpose of weighing the credibility of the witness.

Moreover, the admission of the prior consistent statements elicited by the Government were cumulative of other evidence, and of testimony elicited by Appellant's counsel. For example, on cross-examination of Rodriguez, who testified prior to the child, Appellant's counsel questioned Rodriguez about who gave the drugs to the child, and also asked her the following:

> When the vehicle was stopped by the police officers. Okay? Detective Bloom told you that [the child] had said that Mr. Beltran [Appellant] had given him the heroin, and you responded that the white guy put it in [the child]'s pocket, correct?

E.R. at 186:12–16. (Note the name of the child has been omitted). Therefore, while Appellant's counsel objected on the basis of hearsay, he had in fact already put the child's statements to Detective Bloom before the jury. Given this, even if the admission of the

prior consistent statements was error, considering that at least one of the statements was already mentioned in front of the jury by Appellant's counsel, the error was harmless.

II. *Did the District Court Err in Applying the Two–Level Enhancement Under § 2D1.2(a)(1)?*

■ The district court's interpretation of the Sentencing Guidelines is reviewed de novo. *United States v. Newland,* 116 F.3d 400, 402 ( 9th Cir.1997). However, the district court's factual findings in the sentencing phase are reviewed for clear error. *United States v. Parrilla,* 114 F.3d 124, 126 (9th Cir.1997).

■ Appellant argues that the district court improperly enhanced his sentence under § 2D1.2(a)(1), which provides that the calculation of the base offense level shall include "2 plus the offense level from § 2D1.1 applicable to the quantity of controlled substances directly involving ... an underage ... individual." Appellant asserts that while he was found to have "used" a minor to conceal the heroin, there were no findings that he "used" a minor with regard to the other drugs found in the vehicle.

Section 2D1.2 specifically provides:

(a) Base Offense Level (Apply the greatest):

(1) 2 plus the offense level from § 2D.1.1 applicable to the quantity of controlled substances directly involving a protected location or an underage ... individual; or

(2) 1 plus the offense level from § 2D1.1 applicable to the total quantity of controlled substances involved in the offense; or

(3) 26, if the offense involved a person less than eighteen years of age; or

(4) 13, otherwise.

U.S.S.G. § 2D1.2. It is obvious, that subsections (a)(1) and (a)(2) may in some circumstances result in differing offense levels. The Application Note for example explains that "if the defendant, as part of the same course of conduct ... sold 5 grams of heroin near a protected location and 10 grams of

heroin elsewhere, the offense level from (a)(1) would be level 16 ... the offense level from (a)(2) would be level 17." Application Note 1, § 2D1.2.

Appellant here argues that increasing the base offense level by 2 was error because he only "used" the child to hide the heroin. Nonetheless, the child was involved in the entire transaction. He was (1) with Rodriguez when she obtained the methamphetamine from Appellant's residence; (2) with Appellant when he went to Huglen's residence the second time; (3) with Appellant when he obtained the heroin from Chaparro's residence; and (4) with Appellant and the others when they went to Safeway to sell the heroin. Hence, given these facts, the child was directly involved in the drug transaction with regard to both the heroin and the methamphetamine. Unlike the example in Application Note 1 described above, the child was never absent from the relevant portions of the transaction. Thus, the district court did not err in applying the two-level increase pursuant to § 2D1.2.

### III. Did the District Court Err in Applying the Two–Level Enhancement Under § 3B1.1(c)?

■ Appellant was given a two-level enhancement under § 3B1.1(c) for his role as a supervisor. Appellant challenges this enhancement on the grounds that there are insufficient findings in the Presentence Report to justify this conclusion.

The district court adopted the Presentence Report along with its finding that "[i]n the course of this offense, the defendant supervised the activities of both Maxima Rodriguez and Jim Johnson. He directed them to return to the defendant's residence to pick up a quantity of methamphetamine that was to be delivered later in the evening." Presentence Report at 6–7. Appellant objected to this portion of the Presentence Report, however, the district court at sentencing found that "the defendant did supervise the activities of at least 2 other individuals, so

the two-level increase is appropriate." E.R. at 153.[2]

■ Appellant avers that a sentencing court must make specific factual findings when making an upward adjustment. Appellant is correct, however it is clear that the district court did make factual findings regarding Appellant's role in the offense that supported the upward adjustment. The district court based its findings on the evidence in the case and adopted the Presentence Report, which specifically stated (1) that Appellant supervised both Rodriguez and Johnson, and (2) how he supervised them. Based upon the record and the findings, the district court did not clearly err in making this factual determination.

### IV. Did the District Court Err in Admitting the Government's Evidence concerning Firearms?

■ A district court determination under Federal Rule of Evidence 403 is reviewed for an abuse of discretion. *United States v. Hicks*, 103 F.3d 837, 842 (9th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1483, 137 L.Ed.2d 694 (1997).

■ A review of Appellant's testimony demonstrates that Appellant affirmatively denied participation in drug trafficking, and explained that he was working as an informant for the Government when he became involved in the drug transactions now before this court. It appears that the Government offered the testimony regarding the search of his residence for a prior May 1996 offense, and the firearms and paraphernalia that was found as a result of this search, in order to impeach his testimony that he was not involved in drug trafficking and that he was working with the Government.

■ This court reviews the district court's decision to admit impeachment evidence for an abuse of discretion. *See United States v. Sherwood*, 98 F.3d 402, 409 (9th Cir.1996). Appellant opened the door and allowed the issue of the previous charges to be brought into evidence, and also affirma-

---

**2.** The district court also made a similar finding in the Findings of Fact Order dated October 21, 1997. *See* E.R. at 5.

tively denied participation in drug trafficking on those occasions and in the relevant offenses. Hence, for impeachment purposes the questions were proper. The probative value of the impeachment evidence here is not substantially outweighed by the prejudicial effect. Fed. R. of Evid. 403.

Appellant's counsel failed to ask the court for a limiting instruction regarding this impeachment evidence, and the district court did not sua sponte give the jury a limiting instruction that the evidence should not be used as substantive evidence of the offenses charged, but only to use it in determining the credibility of Appellant's testimony.

We review for plain error the court's failure to give such an instruction sua sponte. *United States v. Armijo,* 5 F.3d 1229, 1232–33 (9th Cir.1993). We hold that the trial court did not commit plain error. The error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 1232. The Government did not question Appellant for an inordinate amount of time regarding the firearm, nor is there evidence that the Government relied upon this evidence as substantive evidence of the crimes charged.

Consequently, the district court did not err in allowing the testimony regarding the firearms.

**AFFIRMED.**

KOZINSKI, Circuit Judge, concurring:

The majority today establishes "two wrongs make a right" as the law of the circuit. The opinion recognizes that "[t]he relevant evidentiary issue here is whether the prior consistent statements were properly admitted." Maj. op. at 1269. Although the majority bypasses the issue, they clearly were not. After the boy testified on direct examination that Beltran had told him to put the heroin in his pocket, the defense attorney inquired on cross whether the boy had prepared his testimony with the prosecutor and his mother before trial. The government attempts to justify the subsequent admission of the boy's prior consistent statements by claiming that the defense attorney's question constituted an "express or implied charge

... of recent fabrication or improper influence or motive" within in the meaning of Federal Rule of Evidence 801(d)(1)(B). This is quite a stretch. Any lawyer worth his salt prepares a witness he's going to call to the stand. And whether a witness has prepared his testimony with opposing counsel is one of the most commonly asked questions on cross. To hold that this question is equivalent to a charge of improper influence would render Rule 801(d)(1)(B)'s requirement a nullity and open the floodgates to the admission of practically any prior consistent statement. "The Rules do not accord ... weighty, nonhearsay status to all prior consistent statements." *Tome v. United States,* 513 U.S. 150, 157, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995). Courts must ensure that prior consistent statements satisfy the requirements of Rule 801(d)(1)(B) before admitting them. Because there was no implied charge of fabrication or improper influence here, admitting the boy's statements was error.

The majority assumes error but holds it was harmless because the district judge instructed the jury to consider the boy's prior statements only in evaluating his credibility. *See* Maj. op. at 1269 – 70. We all agree this instruction is incorrect: A prior consistent statement that meets the requirements of Rule 801(d)(1)(B) is admissible as substantive evidence and not "solely for the more limited purpose of rehabilitating a witness." *United States v. Miller,* 874 F.2d 1255, 1273 (9th Cir.1989).

Where we part company is on the effect of this erroneous instruction. The majority invokes the presumption "that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it." *Greer v. Miller,* 483 U.S. 756, 766 n. 8, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987). They insist that Beltran's jury followed the erroneous instruction, and that admitting the boy's prior statements was therefore harmless. Although we have held that a legally correct limiting instruction may be sufficient to cure the erroneous admission of evidence, *see. e.g., United States v. Laykin,* 886 F.2d 1534, 1544 (9th Cir.1989), 1 am unaware of any case where we concluded that an *incorrect* instruction could have the same effect. I find

this two-errors-are-better-than-one approach troubling. It allows the government to prevail by piggybacking instructional and evidentiary errors, and leads to the counterintuitive result of affirming convictions because of cumulative error.

This case illustrates why it is wrong to apply to an improper instruction the presumption that the jury will follow a proper instruction. The court here instructed the jurors to use the boy's prior consistent statements solely to evaluate his credibility. However, if they concluded the boy was telling the truth at trial, they also must have concluded that the substance of his statements-that Beltran gave him the heroin-was true as well. The credibility/substance distinction is illusory in this context. Indeed, it's precisely because "[i]t is hard to see how a statement can be offered for purposes of rehabilitation and yet not [as substantive evidence]," *Miller*, 874 F.2d at 1273 n. 12, that the Federal Rules of Evidence made prior consistent statements admissible for all purposes. *Cf.* Fed.R.Evid. 801(d)(1)(B) advisory committee note. The instruction given the jurors is erroneous because jurors cannot be expected to follow it. I do not understand-and the majority does not explain-how we can presume the jurors followed an instruction they are incapable of following.

The majority makes this case harder than it need be. I would affirm because the boy's prior consistent statements were cumulative of his mother's, and thus admitting them, while erroneous, was harmless. As for the presumption that juries follow their instructions, the majority takes the rule far beyond its logical bounds and ends up in Never-Never Land. I don't see the need to go there.