NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

MAY 9 2019

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 17-10498 |
| Plaintiff-Appellee, | D.C. No. 4:17-cr-00602-CKJ-EJM-1 |
| v. | |
| ROXANNE MARIE CARPENTER, | MEMORANDUM* |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 18-10006 |
| Plaintiff-Appellee, | D.C. No. 4:17-cr-00602-CKJ-EJM-4 |
| v. | |
| FAUSTO VELAZQUEZ, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding

Argued and Submitted April 15, 2019
San Francisco, California

Before: HAWKINS and M. SMITH, Circuit Judges, and VRATIL,** District

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Judge.

Roxanne Carpenter, Fausto Velazquez, Phoelix Begay, and Brian Meyers (together, codefendants) were indicted for conspiracy to kidnap and kidnapping Angel Gonzalez, in violation of 18 U.S.C. §§ 1201(a)(1) and (c). Meyers and Begay pleaded guilty, while Carpenter and Velazquez proceeded to trial where the jury convicted them on both charges. In these consolidated cases, Carpenter and Velazquez appeal a variety of the district court's rulings related to their trial.[1]

We have jurisdiction over their appeal pursuant to 28 U.S.C. § 1291, and we affirm.

## I.     Carpenter's Claims

1.     Carpenter argues that the district court erroneously gave an instruction based on *Pinkerton v. United States*, 328 U.S. 640 (1946), because the facts of the case did not require a *Pinkerton* instruction and it obliterated her duress defense. Because Carpenter objected only on the basis that the *Pinkerton* instruction did not apply to her, we review her objection based on the erasure of her duress defense for plain error. *See United States v. Gadson*, 763 F.3d 1189, 1215 (9th Cir. 2014)

---

[**] The Honorable Kathryn H. Vratil, United States District Judge for the District of Kansas, sitting by designation.

[1] We address Carpenter's claim that the district court abused its discretion in requiring her to publicly file her offer of proof for her duress defense, and Velazquez's claim that the district court erroneously admitted other act evidence, in a separate, concurrently filed opinion.

(reviewing for plain error because defendants did not raise "this particular objection to the *Pinkerton* instruction").

The district court did not err in giving the *Pinkerton* instruction. As the instruction explained, to find a defendant guilty of kidnapping as a coconspirator, the jury had to first find that "a person named in Count Two of the Indictment committed the crime of kidnapping as alleged in that count." The jury could have found that the kidnapping occurred prior to Carpenter's arrival at Safeway—by which point Gonzalez had already been bound and thrown into the vehicle's trunk—and *Pinkerton* liability could have applied to her. Further, the duress instruction clearly stated, "Duress legally excuses the crime of conspiracy to kidnap and kidnapping," which established that the defense was an excuse to *both* offenses. Thus, the *Pinkerton* instruction did not vitiate the duress instruction, and the jury could still have found Carpenter's codefendants guilty of kidnapping, yet rendered a not guilty verdict for Carpenter due to duress.

2.    Carpenter argues that the police obtained two of her post-arrest statements in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and that the district court erred in denying her suppression motion.

Although Agent Notz misstated that Carpenter "may" receive a lawyer rather than "will," the other accurate warnings suffice to satisfy *Miranda*. *See Duckworth v. Eagan*, 492 U.S. 195, 203 (1989) (the inquiry regarding the

3

adequacy of a *Miranda* warning is "simply whether the warnings reasonably convey to a suspect his [*Miranda*] rights"). Even if Notz's oral misstatement would otherwise be legally fatal, the fact that the agents provided Carpenter with an accurate written statement of rights form—that she signed—remedied any insufficiency. *See North Carolina v. Butler*, 441 U.S. 369, 373 (1979) (noting that a written waiver of one's *Miranda* rights is "strong proof" that the waiver is valid).

In addition, we find that Carpenter validly waived her *Miranda* rights after she invoked her right to silence. Carpenter reinitiated communication with the agents after invoking her right to remain silent, and after the agent reminded her of this right, she affirmed her willingness to talk. The district court found that Carpenter was "very comfortable during the interview," and that she seemed "almost in control of the interview." Carpenter does not identify any facts that contradict those findings. On the record before us, there is nothing to demonstrate that Carpenter's waiver was unwilling or unknowing. *See id.* at 374–75.

Finally, Carpenter's statements were voluntary. Although officers can make "false representations," "false promises," on the other hand, may render a confession involuntary. *United States v. Preston*, 751 F.3d 1008, 1026 (9th Cir. 2014). The test for voluntariness is one of the totality of the circumstances and looks beyond just police conduct. *See id.* at 1019 (overruling prior case law to the extent it held that "police coercion during interrogations must be evaluated without

4

regard to the individual circumstances of the suspect"). While the agents' comments regarding "helping" Carpenter or encouraging her honesty might constitute borderline coercive conduct, there is no evidence that her will was overborne. The district court found that Carpenter displayed no "hesitation or any concerns" and "was very cooperative and interested in speaking with the agents." Carpenter's manner during the interrogation, her experience with law enforcement, and the lack of, or slight, police coercion establish that her statements were voluntary.[2]

3.      The Sentencing Guidelines provide that "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." U.S.S.G. § 3E1.1(a). Carpenter sought a downward adjustment for acceptance of responsibility, which the district court rejected because she "never really, in my mind, accepted responsibility for the idea that this was an activity that was committed primarily to get some easy money to improve their

---

[2] The parties dispute whether Carpenter sought suppression of the statement taken as she was transported to the courthouse. Although Carpenter appears to have initially sought suppression of this second statement as well, at the suppression hearing, she eventually conceded, "If everything went wrong, it went wrong the first day," and did not object to the court ruling only on the first statement. On appeal, Carpenter's briefs contain no specific argumentation regarding the second statement, and it remains unclear on what grounds she seeks suppression of this statement. Even if we undertook de novo review of this second statement, the delay in time, the re-reading of the *Miranda* rights and Carpenter's second waiver surely dissipated any coercion from the agents' conduct the day before, rendering her statement voluntary.

living situation . . . I just reject the contention that this was done out of fear for her safety or the safety of others."  We find nothing to disturb the district court's findings, and the district court did not abuse its discretion in denying the reduction. *See United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir. 2017) (en banc).

4.      Under the Sentencing Guidelines, a defendant who was an "organizer, leader, manager, or supervisor" of the offense may be subject to an increased offense level.  U.S.S.G. § 3B1.1(c).  During sentencing, the court applied this upward adjustment finding that Carpenter "was an organizer or leader." Indeed, Carpenter obtained the equipment used to kidnap Gonzalez, the codefendants used her vehicle, she directed the group to her friend's home while they waited to hear from the cartel regarding where to meet, and she ultimately drove Gonzalez to Mexico.  The evidence was sufficient to show that she was an organizer, *see United States v. Maldonado*, 215 F.3d 1046, 1050–51 (9th Cir. 2000) (noting a "single incident of persons acting under a defendant's direction" constitutes sufficient evidence), and the district court did not abuse its discretion in applying the enhancement, *see Gasca-Ruiz*, 852 F.3d at 1170.

## II.    Velazquez's Claims

1.      Velazquez argues that Carpenter's Mirandized statements to the agents implicated him based on hearsay evidence, and that the court failure to sua sponte instruct the jury that Carpenter's statements could not be used against him

6

constitutes reversible error. Because Velazquez failed to object, we review the absence of the limiting instruction for plain error. *United States v. Sauza-Martinez*, 217 F.3d 754, 759 (9th Cir. 2000).

A district court's failure to give a sua sponte limiting instruction regarding hearsay testimony by one defendant that implicates a codefendant constitutes plain error. *See United States v. Armijo*, 5 F.3d 1229, 1233 (9th Cir. 1993); *Sauza-Martinez*, 217 F.3d at 760. Virtually none of Carpenter's statements, however, are "evidence of [Velazquez's] guilt." *Armijo*, 5 F.3d at 1232. Carpenter's hearsay statements that Velazquez had marijuana in his bathroom, that he might have stolen the missing marijuana, and that he was the "enforcer" of the house and his uncle was in the cartel do not incriminate Velazquez in the charged offenses— kidnapping and conspiracy to kidnap Gonzalez. Thus, these non-incriminating statements do not fall within the ambit of our case law and it was not plain error for the district court not to provide the limiting instruction.

By contrast, Carpenter's statement, "Oh, let me talk to [Velazquez] because I want him to call and find out if there is still money on his head. We're not going to do this if there's not going to be any money," implied that Velazquez was involved in the conspiracy to kidnap Gonzalez, and that he potentially committed the overt act of checking the bounty amount with the cartel. Even though the district court's failure to issue a limiting instruction on this statement constituted

plain error, we find that the error did not affect Velazquez's substantial rights. *See Sauza-Martinez*, 217 F.3d at 759. Carpenter's statement was cumulative of the other evidence properly admitted at trial that established that Velazquez was the group's negotiator with the cartel. For example, Carpenter testified that she asked Velazquez to call the cartel to discover how to "make the guns stop" and he did, and Meyers testified that Velazquez negotiated with the cartel to determine the meet-up location to turn over Gonzalez and receive the reward. In light of this additional evidence presented at trial, we decline to reverse the district court.

2.     Velazquez raises an ineffective assistance of counsel (IAC) claim that asserts that his trial counsel's performance constituted abandonment. Generally, this court permits IAC claims on direct appeal in "unusual cases where (1) the record on appeal is sufficiently developed to permit determination of the issue, or (2) the legal representation is so inadequate that it obviously denies a defendant his Sixth Amendment right to counsel." *United States v. Rahman*, 642 F.3d 1257, 1260 (9th Cir. 2011). We conclude that this is not an "unusual" case because Velazquez challenges both his trial counsel's closing argument *and* his "constructive absence throughout trial," and his trial counsel's representation was not an obvious denial of his right to counsel. *See United States v. Swanson*, 943 F.2d 1070, 1072 (9th Cir. 1991) (finding that because the defendant's IAC claim relied "solely" on his trial counsel's closing argument, the record was sufficient for

8

review on direct appeal).  Accordingly, we decline to decide this claim, and

Velazquez will retain his right to raise this claim in a collateral proceeding.

**AFFIRMED.**