TROTT, Circuit Judge:
 

 OVERVIEW
 

 Donald L. Zink appeals a $5.8 million restitution order imposed following his guilty plea conviction for making false statements in loan applications, in violation of 18 U.S.C. § 1014. Zink contends that the district court erred by imposing such a large restitution order because he lacks the ability to pay such an amount. The government argues: 1) that Zink waived the right to appeal his restitution order in his plea agreement; 2) that Zink failed to object to the magnitude of the restitution order; and 3) that the district court did not commit plain error by imposing such a large restitution order.
 

 We conclude that the plea agreement and Rule 11 colloquy are ambiguous as to whether Zink waived his right to appeal the restitution order. Nevertheless, we hold that Zink’s clear acquiescence in the restitution order relieved the district court of any independent obligation to further determine Zink’s ability to pay restitution. Under these circumstances, we cannot say that the restitution order seriously affects the fairness, integrity, or public reputation of Zink’s proceedings, such that the order amounts to “plain error.” We therefore affirm. .
 

 BACKGROUND
 

 In early 1990, Zink purchased an $11,650,-000 apartment complex in California. To finance the purchase, Zink obtained thirty- • eight loans totalling $12.5 million from seven banks. In applying for these loans, Zink misrepresented the purchase price of the complex and. made false statements about the state of his personal finances. Between October 1990 and January 1991, Zink defaulted on all the loans. The seven banks suffered losses of approximately $5.8 million.
 

 In 1994, the government indicted Zink for making the false statements on his loan applications. The parties entered into a plea agreement, in which Zink agreed to “pay the full amount of restitution to be determined by the court at the time of sentencing.” At the sentencing hearing, the district court imposed a $5.8 million restitution order. At no time during any of the proceedings before the district court did Zink object to the amount, calculation, or imposition of restitution. In this appeal, Zink challenges the amount of restitution ordered by the district court.
 

 DISCUSSION
 

 A. Waiver of Appeal
 

 The threshold issue we must determine is whether Zink, by the terms of the plea agreement, waived his right to appeal the restitution order. We review de novo the question of whether a defendant has waived a statutory right to appeal.
 
 United States v. Haggard,
 
 41 F.3d 1320, 1325 (9th Cir.1994). “[A]n express waiver of the right to appeal in a negotiated plea of guilty is valid if knowingly and voluntarily made.”
 
 United States v. Bolinger,
 
 940 F.2d 478, 479 (9th Cir.1991).
 

 Zink’s plea agreement contains the following statement, under the heading “WAIVER OF RIGHT TO APPEAL SENTENCE”:
 

 Acknowledging the immediately preceding paragraph,
 
 you knowingly and voluntarily waive your right to appeal any sentence imposed by the court in this case and the manner in which the sentence is determined,
 
 so long as your sentence is within the statutory maximum specified above.
 

 The “statutory maximum specified above” refers to the preceding paragraph concerning
 
 *-866
 
 sentencing guideline range calculations. There is no reference to restitution in the “Waiver of Right to Appeal Sentence” section.
 

 We reviewed a plea agreement similar to the one in this case in
 
 United States v. Catherine,
 
 55 F.3d 1462 (9th Cir.1995). In
 
 Catherine,
 
 we concluded that the defendant did not waive the right to appeal a restitution order, despite the fact that he waived his right to appeal his sentence of confinement under the Sentencing Guidelines.
 
 Id.
 
 at 1464. Paragraph 7 of the
 
 Catherine
 
 plea agreement, entitled ‘Waiver of Appeal,” set out the conditions of the waiver:
 

 7. The defendant also agrees that if he receives a sentence within the range .of offense level 13 or less ... he hereby waives any right to appeal from
 
 that
 
 sentence.
 

 Id.
 

 The structure of the plea agreement in
 
 Catherine
 
 “indicate[d] that the defendant waived only his right to appeal his offense level and criminal history category under the Sentencing Guidelines.”
 
 Id.
 
 “The referent ‘that sentence’ cannot refer to the amount of restitution because restitution is not calculated using the guidelines; it is determined by a separate standard set out in 18 U.S.C. § 3663.”
 
 Id.
 

 In the instant case, the plea agreement states that Zink “waive[s] [his] right to appeal any sentence ... so long as [his] sentence is within the statutory maximum specified above.” Like the statement in the
 
 Catherine
 
 agreement, the statement “any sentence” appears to refer only to sentences calculated by using the Sentencing Guidelines. The entire preceding paragraph details the statutory máximums for confinement recognized in the Sentencing Guidelines. The government’s attempts to distinguish
 
 Catherine
 
 are therefore unavailing.
 

 A recent Second Circuit decision supports our interpretation of the plea agreement. In
 
 United States v. Ready,
 
 82 F.3d 551 (2nd Cir.1996), the court rejected the government’s contention that a defendant waived his right to appeal a restitution order. Like the agreement in our case, the plea agreement contained an ambiguity as to whether the term “sentence” included the restitution penalty.
 
 Id.
 
 at 560. “[T]he word ‘sentence,’ as used in the [agreement], would not include restitution, because restitution penalties are not linked in any way with the Guidelines base offense levels.”
 
 Id.
 
 The court construed the ambiguity strictly against the government and considered the merits of the defendant’s claim regarding the restitution order.
 

 Moreover, nowhere in Zink’s Rule 11 plea colloquy does the district court advise Zink of any waiver of appeal. In fact, at Zink’s sentencing hearing, the district court advised Zink that he had “the right to appeal from the judgment of this court.” The government did not object to this advisement.
 
 See. United States v. Littlefield,
 
 105 F.3d 527, 529 (9th Cir.1997) (Hall, J. concurring) (concluding defendant validly waived right to appeal sentence, in part because “prosecution promptly objected to the [district court’s] advisement of appellate rights”).
 

 In light of the above, we conclude that Zink did not knowingly and voluntarily waive his right to appeal the restitution order.
 

 B. The Amount of the Restitution Order
 

 Ordinarily, we review a district court’s imposition of restitution for an abuse of discretion.
 
 United States v. Soderling,
 
 970 F.2d 529, 534 (9th Cir.1992),
 
 cert. denied,
 
 508 U.S. 952, 113 S.Ct. 2446, 124 L.Ed.2d 663 (1993). When a defendant fails to object to an issue before the district court, however, we review only for plain error.
 
 See
 
 Fed. R.Crim.P. 52(b). The plain error doctrine does not authorize review unless: 1) an un-waived error was committed; 2) the error was “plain” (i.e., “clear” or “obvious”); and 3) the error affected the defendant’s substantial rights.
 
 United States v. Olano,
 
 507 U.S. 725, 732-34, 113 S.Ct. 1770, 1776-78, 123 L.Ed.2d 508 (1993). Even if these conditions are met, we grant relief only if the error seriously affeete the fairness, integrity, or public reputation of judicial proceedings.
 
 Id.
 
 at 736, 113 S.Ct. at 1778-79.
 

 The Victim Witness Protection Act (“VWPA”), 18 U.S.C. §§ 3663-3664, gives
 
 *-865
 
 courts the ability to order restitution and “grants the district court broad discretion in the Mnd and amount of evidence required” to order restitution.
 
 United States v. Ramilo,
 
 986 F.2d 333, 335 (9th Cir.1993). The VWPA does not “prohibit a sentencing court from imposing a restitutionary sentence upon a defendant who is indigent at the time of sentencing.”
 
 United States v. Smith,
 
 944 F.2d 618, 623 (9th Cir.1991) (quoting
 
 United States v. Keith,
 
 754 F.2d 1388, 1393 (9th Cir.1985)),
 
 cert. denied,
 
 503 U.S. 951, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992). But “at the time restitution is ordered[,] the record must reflect some evidence [that] the defendant may be able to pay restitution in the amount ordered in the future.”
 
 [1]
 

 Ramilo,
 
 986 F.2d at 336.
 

 At the time of Zink’s sentencing, he had total assets of $1,342.29. He had a net worth of negative $47,636.94. Zink had Sled for bankruptcy in January 1994, and he had negative adjusted gross incomes on his 1991, 1992, and 1993 tax returns. Zink was 60 years old at the time of sentencing.
 

 The government presented evidence which showed that Zink used to earn consulting fees of $50,000 to $60,000 per year, and that Zink planned to continue consulting. The government also presented evidence that Zink once had a portfolio of income properties worth three to four million dollars. This portfolio, however, was acquired over a twenty-five year period, and these properties were all lost after .the collapse of the Southern California real estate market. Under these circumstances, it is questionable whether the record reflects some evidence that Zink may be able to pay $5-8 million in restitution.
 

 Notwithstanding the above, Zink specifically agreed in his plea agreement to “pay the full amount of restitution to be determined by the court at the time of sentencing.” He also acknowledged this agreement in his Rule 11 colloquy knowing full well that the amount of proposed restitution was $5.8 mil-Hon. In discussing the restitution amount, the following exchange occurred:
 

 The Court: What agreement, if any — I know this is covered — but what agreement of restitution has been discussed?
 

 Prosecutor: The defendant is obligated, under the' plea agreement, to pay restitution as ordered by the Court at the time of sentencing.
 

 The Court: How much would that be?
 

 Prosecutor: It ... would be the $5.8 million.
 

 The Court: What are the realistic chances of getting it?
 

 Prosecutor: I would say the chances are fairly unrealistic in cases such as this. This is a matter for sentence. On the other hand, this defendant is obviously a sophisticated businessman. If he’s able to turn his energies to legitimate enterprises upon his release from custody in this case, there might be some possibility of restitution of the banks.
 

 Zink did not object.
 

 At Zink’s sentencing hearing, the district court imposed the $5.8 million restitution order. The court did not explain its reasons for imposing such a large award, nor did it comment on Zink’s ability to pay. The eourt merely took the amount of the banks’ losses, $5.8 million, and made that figure the restitution amount. Once again, Zink did not object.
 

 Given Zink’s agreement to pay full restitution and his failure to object to either the proposed restitution amount or the actual restitution ordered, we conclude that the district court did not commit plain error in ordering the $5.8 million in restitution. Although it is questionable whether the record . suggests that Zink may be able to pay the amount of restitution ordered, Zink’s clear acquiescence in the restitution order relieved the district court of any independent obligation to further determine Zink’s ability to pay restitution. Under these circumstances, we cannot say that the restitution order seri
 
 *-864
 
 ously affects the fairness, integrity, or public reputation of Zink’s proceedings, such that the order amounts to “plain error.”
 
 See United States v. Osborn,
 
 58 F.3d 387, 389 (8th Cir.1995) (affirming restitution order when defendant agreed in his plea agreement to pay restitution amount ordered by the court and defendant “made no objection at sentencing to the imposition of a restitution order_”). We therefore affirm the district court’s $5.8 million restitution order.
 

 AFFIRMED.
 

 [1]
 

 . Because Zink was convicted in 1994, we do not consider the impact of the Mandatory Victims Restitution Act of 1996, Pub.L. No. 104-132, 110 Stat. 1227 (Apr. 24, 1996) (codified at 18 U.S.C. §§ 3663A to 3664), which mandates imposition of restitution "without consideration of the economic circumstances of the defendant.” § 3664(f)(1)(A). . .