**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Adolfo Alberto MARIN–CUEVAS, aka Jesus Marin–Cuevas, Defendant–Appellant.**

No. 96–50686.

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 1, 1997*

Decided June 8, 1998.

---

\* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a); 9th Cir, R. 34–4.

Linda Casey Mackey, Bonita, CA, for appellant.

David P. Curnow, Assistant United States Attorney, San Diego, CA, for appellee.

Before: BEEZER, THOMPSON, and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether the jury properly rejected a claim of United States citizenship by an alleged alien who was charged with illegally re-entering the United States and whether the district court may assign crimi-nal-history points for a prior sentence based solely on the attestation of a probation officer.

## I

Adolfo Marin–Cuevas was convicted of violating 8 U.S.C. § 1326, which makes it a crime for an alien, who had previously been convicted of an aggravated felony and deported, to return to the United States.[1] In August 1989, Marin–Cuevas had been convicted of possessing phencyclidine for sale, an aggravated felony in California. *See* California Health and Safety Code § 11378.5. Four years later, on the basis of this conviction and a determination that he was an illegal alien, the Immigration and Naturalization Service ("INS") deported him to Mexico. Marin–Cuevas thereafter returned to the United States without permission and, in February 1996, was arrested in the state of Washington. Based on these facts, and finding Marin–Cuevas to be an alien, the jury rendered a guilty verdict.

## II

On appeal, as he did at trial, Marin–Cuevas asserts he is not an alien but a citizen of the United States by virtue of "derivative citizenship": that he is the legitimate child of a citizen, his mother, who was physically present in the United States prior to his birth for the statutorily required periods of time.[2]

## A

At trial, Marin–Cuevas presented uncontested evidence that his mother, Rosa Faye,

---

1. When Marin–Cuevas reentered the United States in 1995, § 1326 read in relevant part:
 (a) Subject to subsection (b) of this section, any alien who —
 (1) has been arrested and deported or excluded and deported, and thereafter
 (2) enters, attempts to enter, or is at any time found in, the United States, . . . .
 shall be fined under Title 18, or imprisoned not more than 2 years, or both.
 (b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection —
 . . . .
 (2) whose deportation was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both.

8 U.S.C. § 1326 (1995). Section 1326 has since been amended. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, Div. C., 110 Stat. 3009–546 (1996); Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996). The recent amendments, however, do not bear upon this appeal.

2. Section 1401 of Title 8 of the United States Code reads in relevant part:
 The following shall be nationals and citizens of the United States at birth:
 . . . .
 (g) a person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person,

was indeed born in Los Angeles, California. The question of derivative citizenship, therefore, simply came down to whether or not she had spent enough time in the United States prior to Marin–Cuevas's birth. Under 8 U.S.C. § 1401, she had to be physically present in the United States for at least five years between her fourteenth birthday, in February 1960, and her giving birth to Marin–Cuevas in June 1966. *See* 8 U.S.C. § 1401; *see also* Immigration Technical Corrections Act of 1988, Pub.L. No. 100–525, § 23(d), 102 Stat. 2609. Stressing a conversation Rosa Faye once had with the Border Patrol, the prosecution maintained she failed to satisfy this requirement; allegedly, Rosa Faye claimed to have moved to Mexico "when she was very small, and lived [there] all her life … except from 11–1–69." In response, Marin–Cuevas presented the testimony of his mother's friend and his uncle. Although the friend claimed to have seen Faye in San Diego regularly between 1960 and 1965, the uncle testified that the whole family, including Faye, lived in Mexico during that period.

At the close of evidence, the district court properly charged the jury that it must decide each element of the offense—including the issue of alienage—beyond a reasonable doubt. The problem, according to Marin–Cuevas, is that the court also noted superflu-

ously that evidence of the requirements of derivative citizenship "must be presented to the Immigration and Naturalization Service, which has exclusive authority under the law to issue a certificate of citizenship." Marin–Cuevas did not object at the time.

██ Now, however, he specifically challenges the comment that the INS "has exclusive authority under the law to issue a certificate of citizenship." According to Marin–Cuevas, although the instruction is technically accurate as a statement of law, it might have misled the jury; it might have disguised the fact that, because the burden of proof in deportation proceedings is only "clear and convincing" and not "beyond a reasonable doubt," the INS's conclusion is *not* decisive for purposes of a criminal trial. *See United States v. Ortiz–Lopez*, 24 F.3d 53, 55–56 (9th Cir.1994). Marin–Cuevas also contends that this possibility of confusion was compounded, first, by the admission of his INS file without a limiting instruction, and second, by the court's failure to instruct the jury as to the difference in the burden of proof between INS proceedings and criminal trials. He claims that the government took advantage of these errors, and further muddied the waters, by referring to the INS's deportation proceedings during closing arguments.[3]

**B**

██ Because Marin–Cuevas neither objected to the jury instructions at trial nor

---

was physically present in the United States or its outlying possessions for a period or periods totalling not less than five years, at least two of which were after attaining the age of fourteen years. . . .

8 U.S.C. § 1401. The Immigration and Nationality Act Amendments of 1986 changed the former ten— and five-year requirements to the current five— and two-year requirements. *See* Immigration and Nationality Act Amendments of 1986, Pub.L. No. 99–653, § 12, 100 Stat. 3655. In 1988, however, Congress specifically noted that these amendments applied only to those persons born on or after November 14, 1986. *See* Immigration Technical Corrections Act of 1988, Pub.L. No. 100–525, § 23(d), 102 Stat. 2609. Because Marin–Cuevas was born in 1966, the Amendments of 1986 do not apply to him.

3. For example, the prosecutor said:
And how did the United States prove that [the defendant was a native and citizen of Mexico]? We proved that to you first by way of his birth

certificate from Mexicali showing that he was born in Mexico on June 20th, 1966. At a hearing before an Immigration judge September 9th, 1993 here in San Diego the Immigration judge believed that the United States had proved that he is an alien, and you will see his decision.

Transcript of Trial, Vol. II, at 62. Then, the prosecutor stated in rebuttal:
The Immigration judge heard this very same argument and he made a decision based upon the testimony provided to him.
The Board of Immigration Appeals heard the argument over again and this Defendant heard each of those decisions. He heard the Immigration Judge and he received a copy of it from the Board of Immigration Appeals.
He appealed to the Ninth circuit and they said, "You're not a U.S. citizen. Thank you." *Id.* at 84–85.

offered a limiting instruction,[4] the standard of review is plain error. *See United States v. Hinton,* 31 F.3d 817, 821 (9th Cir.1994); *United States v. Armijo,* 5 F.3d 1229, 1232 (9th Cir.1993). Under the plain error test:

[B]efore an appellate court can correct an error not raised at trial, there must be (1)"error," (2) that is "plain," and (3) that "affect[s] substantial rights." If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."

*Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718 (1997) (quoting *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)) (citations omitted) (alterations in original). This test is most stringent: "Improper jury instructions will rarely justify a finding of plain error." *Armijo,* 5 F.3d at 1232. Reversal is warranted only if it is "highly probable that the error materially affected the verdict." *United States v. Kessi,* 868 F.2d 1097, 1103 (9th Cir.1989).

■■■ Moreover, the district court did not even err in this case, let alone plainly err. The test for error is whether the jury instructions "*taken as a whole* were misleading or represented a statement inadequate to guide the jury's deliberations." *Id.* at 1101 (quoting *Stoker v. United States,* 587 F.2d 438, 440 (9th Cir.1978) (per curiam)) (internal quotation marks omitted) (emphasis added). "The trial judge has substantial latitude in tailoring the instructions, and challenges to the formulation adopted by the court are reviewed for abuse of discretion." *United States v. Beltran–Rios,* 878 F.2d 1208, 1214 (9th Cir.1989).

In this case, to avoid misleading the jury, the district court instructed: "The Government has the burden of proving every element of the charge beyond a reasonable doubt. If it fails to do so, you must return a not guilty verdict." The judge then proceed-

ed to explain that one of the requisite elements was that the defendant was an "alien." Finally, at the very end of the instructions, the judge reiterated:

The Government must prove each element beyond a reasonable doubt. If it fails to do so, you must return a not guilty verdict. Your consideration of a single element should not prejudice your consideration of any other element.

Trial Transcript, Vol. II, at 61. Thus, although the judge neither provided a limiting instruction nor compared and contrasted the burden of proof in criminal trials with that in INS proceedings, he did make sufficiently clear that the jury had to decide the question of whether the government had proven each element of the offense—including the element of alienage—beyond a reasonable doubt.

To be sure, the government might have confused the issue somewhat by referring to the INS file and the deportation decision. Although the government did not refer to the now-challenged portion of the jury instructions, the government's rhetoric in its closing arguments could have made the issue of Marin–Cuevas's derivative citizenship murkier than it had to be. However, taking the trial as a whole, we can justifiably assume the jury knew that INS proceedings are subject to a lower standard of proof than are criminal trials, and are thus not binding on a subsequent criminal trial. The reasons are threefold.

First, the prosecution admitted that the burden of proof in INS proceedings is only clear and convincing. During its closing argument, the government read from the Immigration Judge's decision, which concluded that there was clear and convincing evidence that the facts alleged in the order to show cause for deportation are true. The government also reported that the BIA had found that Marin–Cuevas's "deportability as an alien ha[d] been established by clear, convincing, and unequivocal evidence."

4. Marin–Cuevas noted in his reply brief that his attorney did object at trial to the admission of INS documents. This objection cannot, however, double as an objection to the jury instructions. *See* Fed.R.Civ.P. 51 ("No party may as-

sign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, *stating distinctly the matter objected to* and the grounds of the objection.") (emphasis added).

Second, in its closing remarks, the defense reminded the jury that the burden of proof in a criminal trial is beyond a reasonable doubt:

> The burden of proof that the U.S. Government has—not to prove probably that my client is not a U.S. citizen, that his mother in other words didn't meet these requirements, *not clearly and convincingly that Rosa Faye didn't meet these requirements to convey her citizenship to my client.* The burden of the U.S. Government is to produce or prove beyond a reasonable doubt. They've got to prove beyond a reasonable doubt—beyond a reasonable doubt that these things didn't happen.

Trial Transcript, Vol. II, at 74 (emphasis added).

Third, as the government argues in its brief, in order for the jury to believe that the INS's finding was decisive, the jury would have had to think that the bulk of the two-day trial was superfluous. The central issue at trial was whether Marin–Cuevas obtained derivative citizenship. Through their examination of witnesses and presentation of documents, the lawyers tried to pin down the particular dates during which Rosa Faye, the defendant's mother, resided in the United States. All of that would have been unnecessary if the jury could have simply relied on the INS's previous determination.

We therefore conclude that the jury was not misled. Despite the challenged jury instructions, the absence of a limiting instruction, and the government's various references to the INS's findings, we believe the jury was sufficiently advised that it had the independent obligation to determine whether the prosecution had proven—beyond a reasonable doubt—Marin–Cuevas's status as an alien. The district court did not err.

**5.** Section 4A1.1 states in relevant part:
The total points from items (a) through (f) determine the criminal history category in the Sentencing Table in Chapter Five, Part A.
(a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.
(b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).
. . . .
USSG § 4A1.1.

## III

Marin–Cuevas also contends that the district court erred in assigning criminal-history points for prior sentences the only evidence of which was the attestation of the probation officer.

At sentencing, the government introduced a Presentence Report that identified, among other prior sentences, two misdemeanors for which there were no accompanying hard-copy records. As the probation officer explained, because of the age of the convictions, the records had been purged and he instead had to rely on a computerized criminal history, which was matched to Marin–Cuevas by means of a fingerprint identification. Although the government never provided the district court with a printout of these computerized records, the court assigned four points to Marin–Cuevas's criminal history, two for each misdemeanor sentence, as called for by § 4A1.1(b) of the United States Sentencing Guidelines.[5] Marin–Cuevas contends that, in the absence of any hard-copy records or computer printouts, there was insufficient evidence establishing he had ever been convicted and sentenced for the misdemeanors, and thus it was error for the court to assign these points.[6]

We must address two questions in evaluating the merit of this argument: first, whether the probation officer's report was sufficiently reliable even to be considered at sentencing; and second, if so, whether it was enough to sustain the assignment of the criminal-history points. As for the first question, the Sentencing Guidelines make clear that "sentencing judges are not restricted to information that would be admissible at trial." § 6A1.3, comment. Indeed, "[a]ny information may be considered, so

**6.** Marin–Cuevas does not challenge the reliability of the computerized databases on which the Presentence Report relied, databases which were maintained by the Federal Bureau of Investigation, the California Bureau of Criminal Identification and Investigation, the Department of Motor Vehicles, and local law enforcement agencies. Rather, the claimed error is simply that no copies of the computerized report (or the original records) were submitted to the court.

long as it has 'sufficient indicia of reliability to support its probable accuracy.'" *Id.* (quoting *United States v. Marshall*, 519 F.Supp. 751 (E.D.Wis.1981), *aff'd*, 719 F.2d 887 (7th Cir.1983)). A district court judge's determination that a particular item of evidence is sufficiently reliable is reviewed for abuse of discretion. *See United States v. Pinto*, 48 F.3d 384, 389 (9th Cir.1995).

■ Although this court has not squarely addressed the specific issue at hand, persuasive authority suggests that the district court did not abuse its discretion by taking into account the Presentence Report. First, this court has previously held that an investigative report prepared by Secret Service agents is admissible at sentencing. *See United States v. Burns*, 894 F.2d 334, 336–37 (9th Cir.1990). Second, two of our sister circuits have permitted sentencing judges to take into account officers' uncorroborated reports. *See United States v. Aymelek*, 926 F.2d 64, 68 (1st Cir.1991) (detention officer's affidavit); *United States v. Cuellar–Flores*, 891 F.2d 92, 93 (5th Cir.1989) (probation officer's testimony). Like the Secret Service agents in *Burns* and the officers in *Aymelek* and *Cuellar–Flores*, the probation officer who prepared Marin–Cuevas's Presentence Report obtained his information from a reliable source the computerized criminal history—and had no reason to prevaricate. Therefore, the probation officer's attestation similarly bore "sufficient indicia of reliability," and the district court did not err in considering it at sentencing.

■ The question then becomes whether this evidence was enough to sustain the district court's finding that Marin–Cuevas had in fact been convicted and sentenced for those misdemeanors. The government had the burden of proving the existence of these prior sentences by a "preponderance of the evidence." *United States v. Newman*, 912 F.2d 1119, 1122 (9th Cir.1990). The reviewing court should affirm the district court's factual determination unless the district court clearly erred. *See United States v. Gillock*, 886 F.2d 220, 222 (9th Cir.1989).

In this case, the *only* evidence presented by either side was the presentence report. As the district court explained, Marin–Cue-

vas has never denied he was convicted of those misdemeanors. He has argued only that the government failed to provide sufficient evidence. Because the only evidence before the sentencing court was the Presentence Report, the preponderance of the evidence sustains the district court's finding. Thus, the district court did not err, let alone clearly err.

## IV

For the foregoing reasons, we uphold Marin–Cuevas's conviction and sentence.

AFFIRMED.