UNITED STATES of America, Plaintiff–Appellee,

v.

Joseph E. TAWIL, Defendant–Appellant.

United States of America, Plaintiff–Appellee,

v.

Ramzi Tawil, Defendant–Appellant.

No. 01–50231, 01–50232.
D.C. No. CR–99–01022–MMM–02.
D.C. No. CR–99–01022–MMM–03.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 3, 2002.

Decided June 17, 2002.

Before FERNANDEZ, WARDLAW, and W. FLETCHER, Circuit Judges.

MEMORANDUM *

Joseph Tawil and Ramzi Tawil appeal their convictions and sentences for conspiracy to defraud and obstruct the United States, and in particular the Internal Revenue Service. *See* 18 U.S.C. § 371. We affirm the convictions and affirm in part,

vacate in part and remand as to sentencing and restitution.

■ (1) Both Joseph and Ramzi claim that the district court erred when it admitted evidence regarding the frauds they perpetrated on taxpayers as part of their conspiracy. They claim that the evidence was not relevant to their fraud upon the IRS. We disagree because, contrary to their assertions, the frauds upon the taxpayers were part and parcel of the scheme to divert funds otherwise available (and supposedly destined) for tax payments and to obstruct the government from collecting those and other funds from the taxpayers. The evidence was relevant, even central, to proving up the conspiracy's goal to obstruct and defraud its target, the United States. *See Tanner v. United States*, 483 U.S. 107, 130, 107 S.Ct. 2739, 2752, 97 L.Ed.2d 90 (1987); *Ingram v. United States*, 360 U.S. 672, 679–80, 79 S.Ct. 1314, 1320, 3 L.Ed.2d 1503 (1959); *United States v. Caldwell*, 989 F.2d 1056, 1059 (9th Cir. 1993); *United States v. Salerno*, 902 F.2d 1429, 1433 (9th Cir.1990); *United States v. Krasovich*, 819 F.2d 253, 256 (9th Cir. 1987). By the same token, the exceedingly probative value of the evidence far outweighed any possibility of unfair prejudice to Joseph and Ramzi. *See United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000). The fact that the evidence also tended to portray the taxpayers in a sympathetic light was not a sufficient reason to exclude it. *See United States v. Fleming*, 215 F.3d 930, 939 (9th Cir.2000). In fine, the district court did not abuse its discretion. *See id.* at 938; *United States v. Easter*, 66 F.3d 1018, 1020–21 (9th Cir.1995).

■ (2) Joseph and Ramzi also assert that the district court erred when it failed to give a multiple conspiracy instruction.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

Again, we disagree. Their argument is of a piece with their evidentiary arguments because it also seeks to artificially fractionate their single conspiratorial plot to obtain and keep booty into separate parts. There surely were separate steps to be taken, but, like most trips, most crimes require separate steps. That is far from showing multiple conspiracies. *See United States v. Hopper,* 177 F.3d 824, 829 (9th Cir.1999); *United States v. Patterson,* 819 F.2d 1495, 1502 (9th Cir.1987); *United States v. Bibbero,* 749 F.2d 581, 587 (9th Cir.1984). The fact that both the taxpayers and the government were defrauded has no real tendency to show that there were multiple conspiracies; that sort of dual effect is not unusual. *See United States v. Bryan,* 868 F.2d 1032, 1038 (9th Cir.1989); *see also United States v. Mayo,* 646 F.2d 369, 374 (9th Cir.1981). The district court did not err. *See United States v. Taren–Palma,* 997 F.2d 525, 530 (9th Cir.1993) (per curiam), *overruled on other grounds by United States v. Shabani,* 513 U.S. 10, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994); *United States v. Mason,* 902 F.2d 1434, 1438 (9th Cir.1990).

■ (3) Next it is claimed that the statements Joseph made to IRS agents, when he was not under arrest,[1] should not have been admitted as to Ramzi. However, the record demonstrates that those were coconspirator statements. Thus, they were properly admitted. *See* Fed. R.Evid. 801(d)(2)(E); *Bourjaily v. United States,* 483 U.S. 171, 175, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987); *United States v. Bowman,* 215 F.3d 951, 960 (9th Cir. 2000).

■ (4) Despite the arguments of Joseph and Ramzi to the contrary, the district court did not err when it determined their offense level on the basis of the full amount of the tax that they obstructed the government from collecting. *See* USSG § 2T1.1, comment. (n.1);[2] *United States v. Andra,* 218 F.3d 1106, 1107 (9th Cir.2000). The actual amount of the tax itself is not contested, so the standard of proof for contested facts is of no consequence here. *See United States v. Romero–Rendon,* 220 F.3d 1159, 1163 (9th Cir.), *cert. denied,* 531 U.S. 1043, 121 S.Ct. 640, 148 L.Ed.2d 546 (2000).

■ (5) Because it is perfectly clear that Joseph and Ramzi used their "special skill and knowledge about the tax system to manipulate it fraudulently," the district court did not err when it applied the tax preparer upward adjustment at sentencing. *United States v. Aragbaye,* 234 F.3d 1101, 1106–07 (9th Cir.2000); *see also* USSG § 2T1.4(b)(1)(B).

■ (6) The district court did not err when it determined that Ramzi, who had full knowledge of and actively participated in effectuating the goals of the conspiracy, was a minor rather than a minimal participant. *See* USSG § 3B1.2 comment. (n.2); *United States v. Rojas–Millan,* 234 F.3d 464, 474 (9th Cir.2000). Indeed, on this record Ramzi was quite fortunate to receive a minor role adjustment.

■ (7) Joseph asserts that the district court erred when it imposed an upward adjustment upon him for suborning perjury by his brother Edward. *See* USSG § 3C1.1. We agree. The district court did not err when it determined that Edward had, indeed, committed perjury when he testified on Joseph's behalf. *See United*

---

**1.** Ramzi asserts that Joseph was under arrest. The record makes it plain that he was not. *See United States v. Del Vizo,* 918 F.2d 821, 824 (9th Cir.1990).

**2.** All references to the Sentencing Guidelines are to the version effective November 1, 2000.

*States v. Dunnigan,* 507 U.S. 87, 94–95, 113 S.Ct. 1111, 1116–17, 122 L.Ed.2d 445 (1993); *United States v. Ancheta,* 38 F.3d 1114, 1118 (9th Cir.1994); *United States v. Arias–Villanueva,* 998 F.2d 1491, 1513 (9th Cir.1993). However, there was no direct evidence that Joseph persuaded, procured or induced Edward to testify falsely. *See, e.g.,* USSG § 3C1.1 comment. (n.9); *cf.* 18 U.S.C. § 1622. Although one can be highly suspicious, the fact is that Edward did have personal knowledge of the transaction which gave rise to the facts to which he testified—he did not have to garner those from Joseph. Moreover, his familial relationship might well have induced him to lie on Joseph's behalf, even if Joseph did not ask him to do so. *Cf. United States v. Garcia,* 135 F.3d 667, 670 (9th Cir.1998) (perjurer unrelated and information belonged to defendant). Thus, we are constrained to say that the district court clearly erred when it found that Joseph suborned perjury. *See id.* at 670–71; *United States v. Shannon,* 137 F.3d 1112, 1119 (9th Cir.1998).

■ (8) Joseph and Ramzi both contend that the district court erred when it imposed restitution equal to the total amount of the taxpayer collection accounts involved in this case—$320,086. We agree that there was error because restitution is limited to the amount of actual loss to the government due to the crime. *See* 18 U.S.C. § 3663; *United States v. Lomow,* 266 F.3d 1013, 1020 (9th Cir.2001). There was no evidence that the scheme itself caused the loss of the full $320,086 amount. If the government has decided not to pursue further collection efforts against the

taxpayers, that still does not necessarily show that Joseph and Ramzi caused the whole loss.[3]

■ However, their failure to raise the issue at the district court means that we cannot stop with the fact that there was error. That failure requires that we apply plain error review. *See United States v. Olano,* 507 U.S. 725, 733–36, 113 S.Ct. 1770, 1777–78, 123 L.Ed.2d 508 (1993); *United States v. Zink,* 107 F.3d 716, 718 (9th Cir.1997). Upon doing so, we agree that the error was plain and that it did affect Joseph and Ramzi's substantial rights. Thus, they have crossed the border and entered the territory wherein we exercise our discretion to decide whether to reverse because the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 718 (citation omitted).

As to Ramzi, we determine that the standard for reversal is easily met because he merely failed to raise the issue, and it would be jarring indeed to require him to "pay back" a loss he did not inflict. Joseph's situation is rather different because he, both in writing and at allocution, expressly acceded to the $320,086 amount.[4] Still and all, it would be unfair and would affect the integrity or public repute of this judicial proceeding if Joseph were required to pay an amount of restitution that far exceeds the legal amount. Thus, we must vacate the restitution order and remand to the district court so that it can develop the record.

AFFIRMED except as follows: (1) in case No. 01–50231, we VACATE Joseph's

---

**3.** The record does not show what part of that lack of pursuit was caused by necessity, or by futility brought about by the wrongful delay, or, for that matter, by kindness or decency.

**4.** We note that "waiver" does not apply here because the order does not comply with the

legal strictures on restitution awards. *See United States v. Johnston,* 199 F.3d 1015, 1023 (9th Cir.1999); *United States v. Baker,* 25 F.3d 1452, 1456 (9th Cir.1994), *superseded on other grounds by* 18 U.S.C. § 3663(a)(2).

sentence and REMAND for resentencing absent the obstruction of justice adjustment (the district court need not revisit any other sentencing issues); (2) we VACATE the restitution order in both case No. 01–50231 and 01–50232 and REMAND for a determination of the actual loss caused to the government by the conspiracy.