**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JOE RAYMOND FELIX,
*Defendant-Appellant.*

No. 07-50173

D.C. No.
06CR1610-MJL

OPINION

Appeal from the United States District Court
for the Southern District of California
M. James Lorenz, District Judge, Presiding

Argued and Submitted
February 6, 2009—Pasadena, California

Filed April 13, 2009

Before: Cynthia Holcomb Hall, Barry G. Silverman and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

**COUNSEL**

Benjamin P. Lechman (argued), of San Diego, California, for
the defendant-appellant.

Davene L. Finnel (argued), Karen P. Hewitt, and Bruce R. Castetter of San Diego, California, for the plaintiff-appellee (U.S. Government).

## OPINION

CALLAHAN, Circuit Judge:

Joe Raymond Felix appeals his sentence from a drug conviction. He objects to the district court's consideration of a second misdemeanor conviction, which disqualified him from eligibility for a safety valve sentence, and resulted in a mandatory minimum sentence. First, Felix argues that the district court improperly relied on a computer printout in calculating his criminal history points. Second, he argues that the district court wrongly placed the burden of proof on him to demonstrate that his prior conviction was diverted. Third, he argues that the district court violated the Supreme Court's decision in *Shepard v. United States*, 544 U.S. 13 (2005), by engaging in fact-finding regarding a prior conviction. Finally, he argues that because the alleged prior conviction had a disproportionate impact on his sentence, the district court should have applied a clear and convincing standard of proof. We have jurisdiction to review the district court's order under 28 U.S.C. § 1291. We reject the government's assertion that Felix has waived his right to appeal, but affirm the sentence because none of Felix's challenges to his sentence is persuasive.

## I.  BACKGROUND

On June 14, 2006, Joe Raymond Felix ("Felix") entered the United States from Mexico as the driver and sole occupant of a car registered in California. Felix and the vehicle were escorted to the secondary inspection area where officers discovered and removed five cellophane-wrapped packages con-

taining 13.46 kilograms of methamphetamine of 98 percent purity.

Felix was charged with one count of importation of methamphetamine in violation of 21 U.S.C. §§ 952 and 960. Felix pleaded guilty to the charged offense. A Presentence Report ("PSR") was prepared, which assessed two criminal history points based on Felix's two prior convictions. The first criminal history point was based on a 1999 misdemeanor conviction in Pima County, Arizona, for "Assault, Knowingly Causing Injury (misd)," in violation of ARS § 13-1203. The second criminal history point was based on a 2001 state conviction for an "Attempted Unlawful Transportation of Marijuana for Sale."[1] These two criminal history points placed Felix in criminal history category II, rendering him ineligible for the benefit of the safety valve provision under United States Sentencing Guidelines ("U.S.S.G.") § 5C1.2(a)(1).[2]

At his initial sentencing hearing, Felix objected to the criminal history point based on the misdemeanor conviction in Pima County, contending that the case was dismissed pursuant to a diversion program. The probation officer, however, testified that based on a computer printout, it appeared that Felix had pleaded guilty to the charge and that probation was granted. In an addendum to the PSR, the probation officer reported that his multiple communications with the Pima County records department confirmed that Felix was not granted diversion in this case. Felix did not offer any evidence to support his claim that the case was diverted.

Felix objected to the computer printouts as being improper evidence for the purpose of determining his criminal history

---

[1]Felix does not challenge his marijuana conviction.

[2]The safety valve provision under 18 U.S.C. § 3553(f) and USSG § 5C1.2(a)(1) limits the applicability of the statutory minimum sentence in certain cases. In order to be eligible for safety valve, a defendant, among other requirements, cannot have more than 1 criminal history point.

category. In the addendum to the PSR, the probation officer responded that the original court file of Felix's misdemeanor conviction had been destroyed, but that Pima County's computer records were provided, and they confirmed Felix's misdemeanor conviction.

Applying the applicable sentencing guidelines, the district court reduced Felix's offense level to 29, which at a criminal history level two, resulted in a guideline sentence range of 97 to 121 months. If Felix had only one instead of two criminal history points, he would be eligible for the safety valve provision set forth in 18 U.S.C. § 3553(f), which under the plea agreement would have resulted in an offense level of 25, with a sentence range of 57 to 71 months. However, absent eligibility for the safety valve sentence, 21 U.S.C. § 960(b)(1), and U.S.S.G. § 2D1.1 provided for a mandatory minimum sentence of 120 months. The district court determined that the government had adequately proved Felix's Arizona misdemeanor conviction, and that Felix therefore was not eligible for a safety valve sentence. The court determined that it was required to impose the mandatory minimum sentence of 120 months and did so.

## II.   STANDARD OF REVIEW

We review de novo the validity of a waiver of appellate rights. *United States v. Buchanan*, 59 F.3d 914, 916 (9th Cir. 1995). We review de novo whether a prior conviction is counted under the Sentencing Guidelines. *United States v. Newman*, 912 F.2d 1119, 1123 (9th Cir. 1990). Whether a prior conviction qualifies for inclusion in a criminal history category calculations is reviewed for clear error. *United States v. Marin-Cuevas*, 147 F.3d 889, 895 (9th Cir. 1998). We review a district court's determination of the reliability of evidence used at sentencing for an abuse of discretion. *Id.* (citing *United States v. Pinto*, 48 F.3d 384, 389 (9th Cir. 1995)). We review de novo a district court's interpretation of the Sentencing Guidelines. *United States v. Zolp*, 479 F.3d 715, 718 (9th

Cir. 2007). Finally, we review the district court's application of the guidelines to the facts of this case for abuse of discretion and the district court's factual findings for clear error. *Id.*

## III.   FELIX DID NOT WAIVE HIS RIGHT TO APPEAL

We initially address the government's argument that Felix knowingly and voluntarily waived his right to appeal in the plea agreement.[3] Section 11 of the plea agreement provided that "[i]n exchange for the Government's concessions in this plea agreement, defendant waives, to the full extent of the law, any right to appeal or to collaterally attack the conviction and sentence, including any restitution order."[4]

The government asserted that Felix should be bound by his agreement because he had read the plea agreement, discussed its terms with his attorney, initialed each page of the plea agreement, and signed the last page. The government further noted that at the time of the guilty plea, the magistrate apprised Felix that by agreeing to the plea agreement, he would be waiving his right to appeal, even if the court imposed the mandatory minimum term and that Felix stated that he understood.

**[1]** Generally, a defendant who enters into such a plea agreement waives his right to appeal. *United States v. Lopez-Armenta*, 400 F.3d 1173, 1175 (9th Cir. 2005); *see also United States v. Anglin*, 215 F.3d 1064, 1066 (9th Cir. 2000). However, the government can waive its waiver argument, explicitly or implicitly. *United States v. Garcia-Lopez*, 309 F.3d 1121, 1122-23 (9th Cir. 2002).

---

[3]Although the government conceded this waiver claim during oral argument, we address the issue to reinforce the need for the government to assert a defendant's waiver throughout the sentencing process.

[4]The waiver was conditional on Felix receiving a sentence that was not "greater than the high end of the guideline range (or statutory mandatory minimum term, if applicable)." Felix's sentence met this condition.

**[2]** In *Buchanan*, the defendant knowingly and voluntarily entered into a plea agreement which included a waiver of his right to appeal. 59 F.3d at 917. However, during two subsequent sentencing hearings, the district judge stated that the defendant had the right to appeal his sentence. *Id*. The government did not object to the district judge's statements. *Id*. at 918. We noted that because of the district judge's statement, Buchanan could have had a reasonable expectation that he could appeal his sentence. *Id*. We concluded that the wavier was unenforceable because the district judge had informed the defendant of his right to appeal. *Id*. Indeed, such a waiver of the right to appeal will only be enforced if the government immediately objects to the court's advisement of a right to appeal and the sentencing judge acknowledges the presence of the waiver. *See United States v. Zink,* 107 F.3d 716, 718 (9th Cir. 1997) (concluding defendant did not waive his right to appeal sentence, in part because the government did not object to the district court's advisement that defendant had the right to appeal).

**[3]** Here, the government waived its waiver argument because the sentencing judge on two occasions told Felix that he could appeal his sentence and the government failed to object.[5] On both occasions, the district judge indicated that

---

[5]During Felix's sentencing hearing, the following exchange took place:

**The Court:** Are the appeal rights waived on this?

**Counsel for Felix:** The appeal rights would be waived to the underlying conviction, but I believe he would be allowed to appeal the sentence.

**The Court:** All right.

The government did not interpose any objection to the district court's statement. Later, near the conclusion of Felix's sentencing hearing, a second exchange took place:

**The Court:** And are the appeal rights waived except for, I guess, the issue of Criminal History Category; is that right?

**Counsel for Felix:** Yes, your Honor.

Felix retained his right to appeal his sentence. The judge further stated that should the case come back after appeal, he would give it prompt consideration.

We conclude that the facts in this case are similar to those in *Buchanan* and that the government therefore waived its argument that Felix had waived his right to appeal. *See e.g., Buchanan*, 59 F.3d at 918; *Zink,* 107 F.3d at 718.

## IV. GOVERNMENT PRESENTED ADEQUATE EVIDENCE OF FELIX'S MISDEMEANOR CONVICTION

Felix raises four arguments on appeal against the district court's consideration of his misdemeanor conviction.[6]

---

**The Court:** Thank you.

**Government:** Thank you, your Honor.

**The Court:** You're welcome.

[6]Felix additionally contends that the district court failed to make findings as to his objections as required by Fed. R. Crim. Proc. 32(c)(1). Our review of the record reveals that the district court did make findings in response to Felix's objections. At the sentencing hearing, the district court acknowledged Felix's objection, stating: "I want to deal with the issue regarding criminal history category because that is the objection that you have made." After discussing the burden of proof, the district court noted that Felix had not presented any evidence to support his contention that the prior misdemeanor conviction was dismissed pursuant to a diversion program. The district court later stated that the government's evidence was "reliable and sufficient to sustain the prior conviction by a preponderance of the evidence." In any event, the district court was not required to make specific findings because Felix did not contest the information in the PSR or offer any evidence to contradict the PSR; rather, he contested the information in the computer printout presented by the probation officer. *See United States v. Charlesworth*, 217 F.3d 1155, 1160 (9th Cir. 2000) (determining that the district court did not need to make specific findings because the defendant "did not contest any of the information in the PSR.").

## A.   District court properly relied on the computer printout.

First, Felix contends that the district court erred in assigning a criminal-history point for the prior misdemeanor conviction because the computer printout was improper evidence for that purpose. Specifically, Felix argues that the computer printout is unreliable, noting that the Pima County website states that its contents do "not constitute the official record of the Court"; that "[t]he information provided may be subject to errors or omissions"; and that the "Pima County Justice Court cannot warrant the accuracy."

[4] The Sentencing Guidelines provide that "[i]n determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial," and that a court may consider any information, "so long as it has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3, Cmt. (citing *United States v. Watts*, 519 U.S. 148, 154, 157 (1997)). Moreover, "[a] sentencing judge may consider a wide variety of information which would not be considered admissible at trial." *United States v. Sustaita*, 1 F.3d 950, 952 (9th Cir. 1993) (citation and internal quotation marks omitted). Also, a court may consider a document's hearsay information. *See United States v. Charlesworth*, 217 F.3d 1155, 1160 (9th Cir. 2000) (holding that district court did not err when it relied on the PSR's hearsay information in sentencing the defendant).

[5] In *United States v. Marin-Cuevas*, 147 F.3d 889 (9th Cir. 1998), we held that a district court could rely on a county court's computer printout records to assign criminal history points for prior sentences. There, Marin-Cuevas contended that the district court erred in assigning criminal history points for prior sentences because the only evidence considered by the judge was the probation officer's attestation based on computer records the officer had read but had not provided to the court. *Id*. at 891, 894. The probation officer explained that

the official records had been purged due to their age. *Id*. at 894. We determined that the PSR was sufficiently reliable because "the probation officer who prepared Marin-Cuevas's [PSR] obtained his information from a reliable source[,] the computerized criminal history[,] and had no reason to prevaricate." *Id*. at 895 (noting also that the probation officer's attestation bore "sufficient indicia of reliability"); *see also United States v. Romero-Rendon*, 220 F.3d 1159, 1163 (9th Cir. 2000) (affirming district court's sentence which relied solely on the PSR prepared by the officer, because there was "no discernable reason why the officer who prepared the PSR should be dishonest," especially considering that the listed sources in the probation officer's report were all "state and federal government agencies"); *Charlesworth*, 217 F.3d at 1160-61 (concluding the information in the PSR was sufficient because defendant never offered any evidence to contradict the PSR, arguing instead "that the government failed to sustain its burden of proof").

[6] There was more information and evidence before the district court supporting Felix's prior conviction than was presented to support the prior conviction of Marin-Cuevas. There, the court was never provided with the computerized criminal history records. *Marin-Cuevas*, 147 F.3d at 891, 894. Here, the probation officer provided the district court with Felix's computerized criminal history record from Pima County and stated that he had communicated with the Pima County records department, confirming both the information in the PSR regarding Felix's prior misdemeanor conviction, and that Felix's case had not been diverted or dismissed.

[7] As in *Marin-Cuevas* and *Romero-Rendon*, here there is no "discernable reason" to question the probation officer's honesty, and the sources relied on by the probation officer are equally trustworthy. The probation officer stated in the PSR that he conducted "a search of automated federal, state, and local records," that he also made collateral contact with the

U.S. Probation Office in the District of Arizona, and the Pima County Court records department.

**[8]** In addition, like the defendants in *Marin-Cuevas* and *Charlesworth*, Felix offered no evidence to contradict the PSR but only argued that the government failed to sustain its burden of proof. *See Charlesworth*, 217 F.3d at 1160-61; *Marin-Cuevas*, 147 F.3d at 895. We conclude that the district court did not err when it relied on the PSR, the Pima County criminal history computer printout, and the probation officer's statements in determining that Felix had a prior misdemeanor conviction.[7]

Felix further contends that he actually filed objections to the PSR, and suggests on appeal that he had not in fact entered a guilty plea in the alleged prior case. Felix overstates his assertion of innocence. At his initial sentencing hearing, Felix filed objections to the PSR, asserting:

1.   The case in question was subject to "diversion" and no "judgment" was ever entered against MR. FELIX;

2.   The case was dismissed pursuant to a diversion program;

3.   There are no certified conviction documents in support of the conviction; and

4.   Diversion of the above-mentioned criminal case would negate the criminal history point.

---

[7]Felix also contends that the probation officer's statements contained within the PSR about the computer printouts were hearsay. This assertion is not persuasive in light of *Charlesworth*, 217 F.3d at 1160 (holding that the district court did not err when it relied on the PSR's hearsay information in sentencing the defendant).

**[9]** This amounts to an assertion of post-conviction diversion, not a denial of the conviction. Felix argued, in essence, that the diversion of the case would negate the criminal history point. In short, he claimed that the government needed more reliable proof, not that he did not commit the underlying offense.[8] In any event, our determination that the district court properly relied on the computer printouts, coupled with Felix's failure to present any evidence on the issue, rebuts his assertion on appeal that he was not convicted in 1999.

### B. The district court properly shifted the burden on Felix to show diversion and Felix failed to do so.

Felix's second argument on appeal is that the district wrongly placed the burden on him to demonstrate that his prior conviction was diverted. Felix claims that the district court, in essence, required that he "prove a lack of prior convictions." Felix also asserts that his prior misdemeanor conviction should not have been considered in calculating his criminal history category because under Arizona law, the conviction was expungeable, or subject to diversion. Specifically, he argues that because he successfully completed probation, his misdemeanor conviction should be vacated, and the charge dismissed pursuant to ARS § 13-907(A).

**[10]** In *United States v. Howard*, 894 F.2d 1085, 1090 (9th Cir. 1990), we adopted "the rule that the government should bear the burden of proof when it seeks to raise the offense level and that the defendant should bear the burden of proof when the defendant seeks to lower the offense level."[9] The

---

[8]Indeed, Felix's assertion that his conviction was diverted, *see supra*, is premised on Felix having been convicted and having successfully served his probation.

[9]In *Howard*, we noted that placing the burden on the party attempting to adjust the offense level would "help preserve the base offense levels," observing that to place the burden on the government even when the defendant was trying to lower the offense level would require the district court to "essentially give every defendant a reduction in his base offense level unless the government was able to meet its burden of proof." 894 F.2d at 1089.

"government should bear the burden of proof for any fact that the sentencing court would find necessary to determine the base offense level. . . . After that, the party seeking to alter the base offense level should bear the burden of proving the necessary facts." *Id.* at 1090; *see also Charlesworth*, 217 F.3d at 1158 ("Thus, once the government has established the base offense level, the burden falls on the party seeking to alter this level to prove the necessary facts.").

**[11]** The Sentencing Guidelines provide that in calculating a defendant's criminal history category, "[s]entences for expunged convictions are not counted." U.S.S.G. § 4A1.2(j). However, expungement does not occur automatically under ARS § 13-907(A).[10] Indeed, the Fifth Circuit has commented that § 13-907(A) "(1) appears to make expunction discretionary, and (2) establishes that affirmative steps on the part of the convicted person or a representative are necessary to effect the expunction." *United States v. Cerverizzo*, 74 F.3d 629, 631-32 (5th Cir. 1996).

**[12]** Similarly, we have held that a defendant cannot "get the benefit of an expungement statute when he or she has not complied with the procedures spelled out in the statute." *United States v. Varela*, 993 F.2d 686, 694 (9th Cir. 1993). Thus, for purposes of the Sentencing Guidelines, a conviction

---

[10]The statute provides in relevant part:

   A. . . . [E]very person convicted of a criminal offense, on fulfillment of the conditions of probation or sentence and discharge by the court, *may apply to the judge* . . . who pronounced sentence or imposed probation or such judge . . . to have the judgment of guilt set aside . . . . B. The *application to set aside the judgment* may be made by the convicted person or by the convicted person's attorney or probation officer authorized in writing. C. *If the judge . . . grants the application*, the judge . . . shall set aside the judgment of guilt, dismiss the accusations or information and order that the person be released from all penalties and disabilities resulting from the conviction . . . .

ARIZ. REV. STAT. ANN. § 13-907 (emphasis added).

will not be considered "expunged" where the defendant, although entitled to expungement, never followed the formal procedures as required by the statute. *Id.* at 693-94.

Felix's argument that the district court wrongly placed the burden on him to prove the prior conviction mischaracterizes the district court's proceedings. Contrary to Felix's assertion, the district court required that the government first prove Felix's criminal history points.

**[13]** After the government established Felix's misdemeanor conviction, Felix asserted that his prior conviction should not be counted because it was subject to dismissal pursuant to a diversion program. However, Felix offered no evidence that he applied to a judge to get his conviction dismissed or diverted. Indeed, he never asserted that he made such an application. The Arizona statute requires a person to actually "apply to the judge," and provides that then, "[i]f the judge . . . grants the application," the judgment will be set aside. Ariz. Rev. Stat. Ann. § 13-907(A), (C). Thus, consistent with *Howard*, only after the government established Felix's base offense level, was Felix put to the task of attempting to reduce the base offense level by showing that his conviction had been diverted. Felix failed to do so, and his misdemeanor conviction was properly considered in calculating his criminal history. *See Cerverizzo*, 74 F.3d at 632; *Varela*, 993 F.2d at 693-94.

## C.    The district court's reference to Felix's misdemeanor conviction does not violate *Shepard*.

Felix's third argument is that *Shepard v. United States*, 544 U.S. 13 (2005), prohibits courts from judicial fact-finding as to the nature of the adjudication or any other facts about an alleged conviction. He asserts that the government should have proved Felix's prior conviction with "judicially created" documentation relying on *United States v. Snellenberger*, 548 F.3d 699 (9th Cir. 2008) (en banc).

**[14]** Both *Shepard* and *Snellenberger* examined what information a court may extract from documents recording a conviction when applying the modified categorical approach of *Taylor v. United States*, 495 U.S. 575 (1990). *See Shepard*, 544 U.S. at 16; *Snellenberger*, 548 F.3d at 701. In neither case was there any question about the *fact* of the conviction. Rather, the issue was whether a court could rely on certain documents to determine the *type* or *character* of the conviction. *See Shepard*, 544 U.S. at 16 ("We hold that . . . a later court determining the character of an admitted burglary is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented."); *see also Snellenberger*, 548 F.3d at 701 ("[W]e must figure out whether the conduct to which he pleaded guilty was burglary of a building or other structure . . . and further whether the burglary was of a dwelling. . . ."). Here, the issue is only whether the documents provided by the probation officer supported the fact of the misdemeanor conviction, not its type or character. Accordingly, Felix's reliance on *Shepard* and *Snellenberger* is without merit.

D.  **The district court did not err in using a preponderance of the evidence standard when it imposed the mandatory minimum sentence.**

Felix's final argument on appeal is that the district court erred in using the preponderance of the evidence standard instead of a clear and convincing standard in determining whether he had a prior misdemeanor conviction. He asserts that the courts should have used the clear and convincing standard because the determination had a disproportionate impact on his sentence, namely, by increasing his guideline sentence range and subjecting him to a mandatory minimum sentence. In support of his argument, he cites to several cases including *United States v. Mezas de Jesus*, 217 F.3d 638, 643-45 (9th Cir. 2000) (requiring clear and convincing evidence

for sentencing factor that increased sentence from "less than two years to nearly five years"), and *United States v. Hopper*, 177 F.3d 824, 833 (9th Cir. 1999) ("[A] potential increase of 48 months satisfies the *Restrepo* extremely disproportionate impact test.").

**[15]** The preponderance of evidence standard is generally the appropriate standard for factual findings used for sentencing. *United States v. Dare*, 425 F.3d 634, 642 (9th Cir. 2005); *United States v. Restrepo*, 946 F.2d 654, 661 (9th Cir. 1991) (en banc) ("[A]s a general rule . . . , due process does not require a higher standard of proof than preponderance of the evidence to protect a convicted defendant's liberty interest in the accurate application of the Guidelines."). However, " 'when a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction,' " the government may have to prove the factor by clear and convincing evidence. *Mezas de Jesus*, 217 F.3d at 642 (quoting *Restrepo*, 946 F.2d at 659). In *United States v. Jordan*, 256 F.3d 922, 928 (9th Cir. 2001), we noted that in determining whether a sentence has a disproportionate impact, we will look at the "totality of the circumstances," including the factors pronounced in *United States v. Valensia,* 222 F.3d 1173, 1182 (9th Cir. 2000), *cert. granted, judgment vacated, and remanded by* 532 U.S. 901 (2001) (internal quotation marks omitted).

**[16]** We, however, have "applied the 'disproportionate impact' test only in the case of federal guideline sentencing enhancements." *Dare*, 425 F.3d at 642 (citing *United States v. Gonzalez*, 365 F.3d 796, 799 (9th Cir. 2004)). In *Dare*, the defendant argued that his sentencing had a disproportionate impact of doubling his sentence from five to ten years, and thus, the district court erred when it used the preponderance of the evidence standard instead of the clear and convincing standard. 425 F.3d at 642. However, we explained that, while the defendant's argument would be "cognizable under our case law if his sentence were imposed solely by reference to

enhancements under the federal sentencing guidelines," because his sentence "was imposed by virtue of the mandatory minimum requirements," the court would not and need not determine whether the sentence had a disproportionate impact. *Id*. We noted that statutory minimum sentences "bind the district court, not the sentencing guidelines and enhancements." *Id*. We further noted that the district court's findings did not expose the defendant to a higher statutory maximum sentence, which in that case was life imprisonment. *Id*.

**[17]** Felix's sentence was also "imposed by virtue of the mandatory minimum requirements." The Sentencing Guidelines note that where a mandatory minimum sentence applies, as it does under 21 U.S.C. § 960(a) — the statute Felix was sentenced under — the mandatory minimum may be "waived" if, among other reasons, defendant qualifies for the safety valve provision outlined in 18 U.S.C. § 3553(f). U.S.S.G. § 2D1.1, Cmt. 7. Felix, however, did not qualify for the safety valve provision, and, as a result, was exposed to the mandatory minimum sentence. Moreover, as in *Dare*, there were no discretionary enhancements; rather, the statutory minimum sentence in section 960(a) bound the district court. *Dare*, 425 F.3d at 642. Also as in *Dare*, the statutory maximum sentence was a life sentence, but the district court did not impose a life sentence. Accordingly, we conclude that the district court did not err when it used the preponderance of the evidence standard instead of the clear and convincing standard.

**[18]** Even if we were to consider the mandatory minimum sentence of 120 months to be an "enhancement," the preponderance of the evidence standard would still apply. The application of *Valensia's* six factors to this case reveals that Felix's sentence was not exceptional. *Valensia*, 222 F.3d at 1182. The first *Valensia* factor — whether the enhanced sentence falls within the maximum sentence for the crime alleged — does not apply because Felix's mandatory minimum sentence of 120 months falls well within the lifetime maximum sentence.

Factors two, three, and four also are not in play. Felix's mandatory minimum sentence does not negate the presumption of innocence for the crime alleged in the indictment, the facts offered in support of the sentence do not create new offenses requiring separate punishment, and the increase in sentence is not based on the extent of the conspiracy.

Factors five and six arguably apply, but do not dictate that the clear and convincing standard be applied. Had Felix qualified for the safety-valve provision, Felix's offense level would have been 25, which at a criminal history level one, would have resulted in a sentencing range of 57 to 71 months. This suggests that the fifth *Valensia* factor — whether the increase in the total number of offense levels is less than or equal to four — would apply in this case. Also, the sixth factor — whether the enhancement more than doubles the sentence — may have been met. However, the application of the fifth and sixth *Valensia* factors do not require, or even suggest, the use of the clear and convincing standard. *See Hopper*, 177 F.3d at 833 (holding that a four-level adjustment is not an exceptional case requiring clear and convincing evidence).

**[19]** We have imposed the clear and convincing standard only in *exceptional circumstances*. *See e.g.*, *Jordan*, 256 F.3d at 929 (requiring the clear and convincing standard where there was a nine-level enhancement of defendant's offense level, and an increase of defendant's sentence range from 70-87 months to 151-188 months); *Mezas de Jesus*, 217 F.3d at 643 (requiring the clear and convincing standard where there was a nine-level enhancement for "an offense for which [the defendant] was never even charged."). The doubling of a sentence, particularly when based on the difference between a sentence under the safety valve provision and the mandatory minimum sentence does not render the case "exceptional" and

does not require the application of the clear and convincing standard of proof.[11]

## V.    CONCLUSION

We conclude that the government, by failure to object to the sentencing judge's statements that Felix could appeal his sentence, waived its argument that Felix waived his right to appeal. We further conclude that none of Felix's arguments on appeal are persuasive. The Guidelines and Ninth Circuit case law allow the district court to consider a computer print-out. The district court correctly placed the burden of proving Felix's prior convictions on the government, and properly required that Felix show that his conviction had been expunged or diverted. The district court's use of the computer printout did not violate *Shepard* because the court only used the printout to determine the existence, not the nature, of the conviction. Finally, the district court did not err in using the preponderance of evidence standard rather than the clear and convincing evidence standard with respect to the proof of Felix's misdemeanor conviction, because the imposition of a non-discretionary mandatory sentence does not require the latter standard. Further, even applying the factors set forth in *Valensia*, Felix's sentence does not present extraordinary circumstances that require the application of the higher standard. Accordingly, Felix's sentence is **AFFIRMED**.

---

[11]Our discussion of the standards of proof should not be read as endorsing Felix's underlying assertion that the evidence of the misdemeanor conviction would not have met the clear and convincing standard of proof. We need not, and do not, address that issue.